UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 21-cr-191-JEB |
| | : | |
| RYAN ZINK, | : | |
| | : | |
| Defendant. | : | |

UNITED STATES' OPPOSITION
TO DEFENDANT'S MOTION IN LIMINE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes the defendant's Motion in Limine (ECF No. 55). In that motion, the defendant asks this Court to preclude the government from introducing evidence of "any signs, plaques, notices, 'No Trespassing' markings, dispersal announcements, barriers, fences or barricades," suggesting that he "could not have seen or heard" such notices "at his location(s)." *Id.* at 1. The defendant also seeks an order precluding the government from arguing that the defendant "is guilty of any crime(s) due to the criminal conduct of others." *Id.* at 2. As explained below, neither contention has merit.

1. The defendant's request to exclude evidence of signage, fencing, barriers, and other evidence alerting him that he was not allowed to enter the Capitol's restricted area is meritless. As the defendant acknowledges (ECF No. 55 at 1), such evidence is plainly admissible, at a minimum, if the government "first lays a foundation that [the defendant] actually was in a place to witness such features." *Ibid.* Here, as in other January 6 cases involving charges of unlawful entry under 18 U.S.C. § 1752(a)(1), the government's evidence will show that, in preparation for January 6, the restricted area around the Capitol was clearly marked with fencing, barricades, and, in many locations, signage. In addition, the evidence will show that, before the riot began and before the

1

defendant himself entered the restricted area, the defendant approached the restricted area from the west side and that, from there, he made his way to the barricades on the east side of the Capitol. That evidence alone will provide a more than adequate foundation for admitting, at trial, evidence of the fencing, barricades, barriers, and signage that the defendant would have seen along his path.

But there is more. In this case, the defendant recorded—and then posted on social media—videos of himself as he stood only feet away from the fencing and signage that he now tries to exclude. In one video, the defendant recorded himself as he spoke against the backdrop of fencing and "AREA CLOSED" signs, near the restricted area's western boundary:



**"AREA CLOSED" SIGNAGE ON WEST SIDE**

In another video, the defendant recorded himself as he stood, at most, a few feet away from the metal bike racks that marked the restricted area on the Capitol's east side:



And third-party, open-source video evidence confirms that the defendant had a front-row view of those barricades:

3



Contrary to the defendant's suggestion, there is ample foundation for admitting the evidence that the defendant's conclusory motion seeks to exclude.

2. The defendant's request to exclude evidence of the "actions of others" is also meritless, for at least three reasons.

First, in Count One, the defendant is charged with, among other things, aiding and abetting the obstruction of an official proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. For that reason alone, the acts of other rioters who also participated in the obstruction of the certification of the electoral college—and whose conduct the defendant is charged with aiding and abetting—are relevant and admissible in this case.

Second, putting aside accomplice liability, the defendant's motion in limine tries to bar, under the banner of "actions of others," arguments and evidence that are rooted firmly in individual, principal liability and that are accordingly permissible. Count One, as noted, charges

the defendant with obstruction of an official proceeding, in violation of 18 U.S.C. § 1512(c)(2). Establishing a defendant's guilt of that offense as a principal requires proof that the defendant attempted to, or did, obstruct or impede the certification of the electoral college. In addition, Counts Three and Four charge the defendant with committing disorderly and disruptive conduct (in violation of 18 U.S.C. § 1752(a)(2), and 40 U.S.C. § 5104(e)(2)(D), respectively), and both offenses require proof of disorderly and disruptive conduct: with the intent to impede or disrupt government business (Count Three), and with the intent to impede, disrupt, or disturb an orderly session of Congress (Count Four). *Id.* Count Three also carries the additional requirement that the conduct "*in fact*, impedes or disrupts the orderly conduct of Government business or official functions." 18 U.S.C. § 1752(a)(2) (emphasis added). As can be seen from the jury instructions used in other January 6 cases, disorderly conduct includes conduct that is "unreasonably loud and disruptive under the circumstances." *E.g.*, *United States v. Matthew Bledsoe*, No. 1:21-cr-204 (BAH), ECF No. 215 at 9 (D.D.C. July 21, 2022). In other words, context matters.

      To prove that the defendant's conduct attempted to—and did in fact—impede and disrupt Congress, the government expects to present testimony from law enforcement officers who served at the Capitol on January 6, 2021. The officers will explain that the Capitol grounds were closed to the public on January 6, 2021; that no member of the mob was authorized to be on those grounds; that no member of the mob submitted to security checks; and that the Capitol Police assessed every member of the mob to be an active threat. Given a variety of factors, including the size of the crowd and the existence of multiple breach points, Congress was forced to recess. Congress could not resume its business until the entire mob was cleared. The defendant was present within the restricted grounds—immediately outside the Capitol building—and law enforcement officers ultimately had to expel all rioters before Congress could return from recess. In that way, his

conduct was *in fact* disruptive. And proof of this requires evidence of the conduct of other rioters. As Judge Kollar-Kotelly explained in another January 6 case:

> The following metaphor is helpful in expressing what the statute [18 U.S.C. §1752(a)(2)] *does* require. Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted Congressional proceedings, and each individual rioter contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the Court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business and official functions.

*United States v. Jesus D. Rivera*, Case No. 1:21-cr-60 (CKK), ECF No. 62 at 13. In other words, the nature of these crimes requires proof of collective action. It was the mob's collective action—*i.e.*, the actions of the defendants alongside the actions of his fellow rioters—that ultimately disrupted Congress. This characterization misstates nothing and is fair argument for the jury.

Third, the conduct of other rioters is also relevant for another purpose: at least where those other rioters' actions were known to the defendant, their conduct is probative of the defendant's own mens rea and motive. The defendant's motion in limine suggests that contextual information about the conduct of other rioters around the defendant on January 6 could confuse the issues. But it is neither novel nor controversial to see other people's behavior as probative of a defendant's state of mind. Indeed, in other trials arising out of the January 6, 2021 riot at the Capitol, the government has made similar arguments about the relationship between the conduct of nearby rioters and other defendants' states of mind. *E.g.*, *Rivera*, Tr. 6/15/2022 at 198 (Closing Argument) ("Mr. Rivera was part of a huge collective of people who disrupted Congress and the staff as they worked … He heard people chanting outside the building. 'Whose house? Our house.' He heard those same chants when he entered the building as well. He watched rioters confront law enforcement on the west front plaza and fight to fend off the mobs on the northwest stairs.")

To be sure, the defense may argue—if the evidence supports it—that the defendant failed to see, hear, or understand what was happening around him. But the defense should not be able to convert this argument into a legal principle which treats the events happening around the defendant as irrelevant. Context matters. The behavior of other rioters, together with other evidence, matters. That evidence tends to establish the defendant's intent and motive when he joined the other rioters in breaching the barricades on the East Side of the Capitol and remaining inside the restricted area.

Dated: July 3, 2023                                    Respectfully submitted,

                                                               MATTHEW M. GRAVES
                                                               United States Attorney
                                                                D.C. Bar No. 481052

                        By:     /s/ Francesco Valentini
                                FRANCESCO VALENTINI
                                D.C. Bar No. 986769
                                Trial Attorney
                                United States Department of Justice
                                Criminal Division (Detailed to the D.C. U.S. Attorney's Office)
                                601 D Street NW
                                Washington, D.C. 20530
                                (202) 598-2337
                                francesco.valentini@usdoj.gov