## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 21-cr-191-JEB** |
| | : | |
| **RYAN ZINK,** | : | |
| | : | |
| Defendant. | : | |

### UNITED STATES' OPPOSITION
### TO DEFENDANT'S MOTION FOR DISCLOSURE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the defendant's Motion for Disclosure of All Undercover Agents, Antifa Activists, and Confidential Human Sources Within the Sphere of Defendant's Alleged Conduct. ECF No. 51. The defendant's confusing motion lacks adequate factual and legal support and misconstrues applicable law on exculpatory evidence. It must therefore be denied.

### Factual Background

At 1:00 p.m., on January 6, 2021, a Joint Session of the United States Congress, consisting of the House of Representatives and the Senate, convened in the Capitol Building. The Joint Session assembled to debate and certify the vote of the Electoral College of the 2020 Presidential Election. Prior to January 6, 2021, the U.S. Capitol Police, with authority over security on the Capitol grounds, had set up security barriers on the Capitol grounds. Below is a map of the restricted area:



With the Joint Session underway and with Vice President Mike Pence presiding, a large crowd gathered outside the U.S. Capitol. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers.

On January 6, 2201, the defendant marched from the area near the Ellipse in Washington, D.C. to the United States Capitol. By approximately 1:45 p.m., the defendant stood immediately outside the restricted grounds on the east side of the Capitol. At approximately 2:00 p.m., other rioters violently breached the barricades marking the restricted area in the vicinity of the defendant.

Shortly thereafter, the defendant entered the restricted area, marched through the plaza with others, and subsequently proceeded up the stairs of the Capitol's Central East Portico.

While on restricted grounds immediately outside the Capitol building, the defendant filmed a series of video clips, some of which depict him in the midst of crowds that were attempting to make entry into the building. In one clip, the defendant recorded himself stating, "We knocked down the gates! We're storming the Capitol! You can't stop us!" In the same video, the defendant panned the phone camera to show the crowd around him and later began chanting, "We want Trump!", as he moved through the crowd at the footsteps of the Capitol. The defendant then shouted, staring into his recording device: "You all want to know how it's going? We are going to bum rush this shit!" In a second video, the defendant filmed the crowd as it attempted to breach the Rotunda Doors to the Capitol. The defendant stated, "They're not going to get this one." In a third video, the defendant shouted, "You wanted to see what it's become? We're in the doors!" Towards the end of the video, the defendant turned the camera to capture another individual smashing a window near the Rotunda Doors.[1] Later in the afternoon of January 6, the defendant was also present within the restricted grounds on the Capitol's west side.

### Applicable Law

The defendant's request does not appear to be based on Rule 16 or a specific discovery rule, but rather on the government's constitutional obligations. The prosecution is required to disclose "evidence favorable to an accused." *Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Youngblood v. West Virginia,* 547 U.S. 867, 869 (2006). "Evidence favorable to an accused" means exculpatory evidence and impeachment evidence that is material to either the issue of guilt or punishment. *Strickler v. Greene,* 527 U.S. 263, 280 (1999). "For an item to be *Brady*, it must be

---

[1] That individual, Hunter Ehmke, has since been charged, convicted, and sentenced for his actions on January 6, 2021. *See United States v. Hunter Ehmke*, No, 1:21-cr-29 (D.D.C.).

something that is being 'suppress[ed] by the prosecution.'" *United States v. Blackley*, 986 F. Supp. 600, 603 (D.D.C. 1997). Moreover, there is no *Brady* violation when the evidence is disclosed in sufficient time for the defense to make effective use of it. *United States v. Andrews*, 532 F.3d 900, 907 (D.C. Cir. 2008) (no error in mid-trial disclosure of potential impeachment material when the defendant was able to make effective use of the information). Nor is there any *Brady* violation if the evidence at issue is not materially favorable to the defense. *See, e.g.*, *United States v. Sheppard*, No. CR 21-203 (JDB), 2022 WL 17978837, at *10 (D.D.C. Dec. 28, 2022).

Where a defendant claims a violation of these rules, the D.C. Circuit has explained that the Court must conduct a three-part inquiry:

> A *Brady* violation has three parts. "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued."

*United States v. Mason*, 951 F.3d 567, 573 (D.C. Cir. 2020) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).

### The Defendant's Disclosure Request Lacks Merit

Underpinning the defendant's motion is the unsupported conjecture that government actors—whether confidential human sources or undercover law enforcement—instigated the riot to entrap innocent participants. According to the defendant, he "was drawn near to activities of property destruction and vandalism set up by individuals suspected of being confidential government sources, undercover agents or protected Antifa assets." ECF No. 51 at 1. The defendant cites no specific factual basis for this claim and provides no granularity in support of his sweeping assertion, aside from questionable news articles.

Ignoring for the moment, however, the lack of an adequate factual basis for the defendant's claim, the defendant's motion appears to also be based on a flawed understanding of the law. The

4

Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53, 59 (1957), has long established that an informer's privilege exists to further and protect the "public interest in effective law enforcement" and permits the government to withhold from disclosure the identify of individuals who "furnish information of violations of law to officers charged with enforcement of that law." *Id.* at 59. Notwithstanding this broad privilege, the Supreme Court noted that the government's right to withhold may be limited by whether the identity of the informer is relevant and helpful to the accused's defense, particularly in a case where the informer "helped to set up the commission of the crime and who was present at its occurrence." *Id.* at 62 (where the informer helped purchase narcotics from the defendant).

Underlying *Roviaro* and its progeny is the principle that the Court must appropriately balance the equities when a defendant asserts that the identification of an individual might be helpful and relevant to the defendant's case. Here, the defendant's request is broad, untailored, and littered with conjecture. To start, rather than attempting to identify the "mysterious" individuals with whom he purports to have interacted,[2] he generically demands the identities of all persons present on the east side of the U.S. Capitol who may or may not be confidential human sources or "government agents among the protesters." ECF No. 51 at 4. Moreover, the defendant does not even attempt to explain how the identities of any of these individuals provide helpful or relevant information to his defense. Even assuming *arguendo* that the defendant's theory were plausible— *i.e.,* that hundreds of Antifa "agitators" were present on Capitol grounds during the riot or that "informants" were present on the grounds, *id.*—the defendant does not explain how such persons

---

[2]     The defendant links one open-source video to his motion (ECF No. 51 at 3), but, contrary to the defendant's suggestions, that footage does not show the defendant being "threatened" by "mysterious unidentified vandals" or being "unable to prevent the mysterious perpetrators from damaging the building."

affected his participation, his conduct, or his intent on that day. Despite the fact that the defendant has access to the same open-source videos, photographs, and closed-circuit videos that gird the charges in this case, the defendant does not point to a single factual circumstance that justifies a motion to compel identification. Nor does the defendant offer any legally plausible theory of how the presence of any of these alleged persons could support a legal defense against the charges in this case, or his knowledge, at the time, of alleged provocateurs. As should be clear, the defendant's request is a textbook fishing expedition.

The reality is, of course, far less nefarious. As the government has repeatedly explained and proffered, it is aware of no individual on Capitol grounds who was authorized by the government to act as an agent provocateur. When law enforcement officers or agents were identified as possible suspects, the government appropriately pursued investigations and, in some instances, charges. *See, e.g.*, *United States v. Mark Ibrahim*, 21-cr-496-TJK (DEA agent charged for his participation in the January 6 attack); *United States v. Thomas Webster*, 21-cr-208-APM (retired NYPD officer charged); *United States v. Jared Wise*, 23-cr-184-RDM (FBI agent charged); *United States v. Joseph Fischer*, 21-cr-234-CJN (Pennsylvania officer charged); *United States v. Jacob Fracker*, 21-cr-34-CRC (Virginia law enforcement officer arrested). And the government has disclosed videos and reports from the Metropolitan Police Department's Electronic Surveillance Unit, which included evidence of officers dressed in plain clothes alleged to have engaged in misconduct. *See United States v. Pope, et al,* 21-cr-128-RC (ECF No. 90, at 2); *see also id*. (ECF No. 72 at 22-24, 81 at 14, 82 (Motion to Remove Designation of 'Sensitive' From Undercover MPD Videos and Release Them to the Public), 94, 95, 100, 101, 102, 103, and 107)).

There is likewise no merit to the defendant's request for information regarding "confidential human informants" that he claims (ECF No. 51 at 6) were present at the Capitol. Assuming *arguendo* that there were individuals who were confidential human sources on the grounds of the Capitol on January 6, the mere existence of such informants is not in itself exculpatory to the defendant's case. Rather, as the Court explained in *Roviaro*, the inquiry is whether the informant possesses information that is relevant to the case. In *Roviaro*, the Court noted that the informant in question "played a prominent part" in setting up the narcotics transaction and "might have disclosed an entrapment." 353 U.S. at 64. "He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package." *Id.* And "[h]e might have thrown doubt upon the … identity" of the defendant in that case. *Id.* None of those factors exists here. To the contrary, the defendant has not identified a single interaction with a single member of the public who, if identified as a confidential human source, might arguably support a plausible claim of entrapment or lack of knowledge. Without that basic factual nexus between a person or persons and the defendant, there is no basis to speculate, as the defendant's motion does, that the identities he seeks would be favorable to the defense.

To be clear, the government understands its constitutional obligations. To the extent the government identifies information relevant to an entrapment defense or helpful to the defense, the government has or will provide it. To the extent the defendant identifies something specific he seeks clarification on, the government will address it. But this request is untethered to the defendant's case and ignores the government's repeated assertions that no person—law enforcement, law enforcement-affiliated, or otherwise—acted as an agent provocateur at the United States Capitol on January 6, 2021.

For the foregoing reasons, the United States respectfully submits that the defendant's motion should be denied, or in alternative, be deemed not ripe for adjudication.[3]

Dated:  July 3, 2023                         Respectfully submitted,

                                             MATTHEW M. GRAVES
                                             United States Attorney
                                             D.C. Bar No. 481052

                                             By: /s/ Francesco Valentini
                                             FRANCESCO VALENTINI
                                             D.C. Bar No. 986769
                                             Trial Attorney
                                             United States Department of Justice
                                             Criminal Division (Detailed to the D.C. U.S.
                                             Attorney's Office)
                                             601 D Street NW
                                             Washington, D.C. 20530
                                             (202) 598-2337
                                             francesco.valentini@usdoj.gov

---

[3]     The defendant also asserts, in passing, that he is "being prosecuted for serious crimes in part for trying to expose unknown vandals at the Capitol whom are not being prosecuted" and that, in part "[a]s a matter of … the right to confront accusers," he "has a right to know and cross-examine the witnesses and actors he is accused of interacting with on January 6." ECF No. 51 at 4.  Neither assertion has merit.  As to the former: the defendant is being prosecuted for obstructing and impeding the certification of the Electoral College vote on January 6, 2021 (and aiding and abetting others in doing so), in violation of 18 U.S.C. § 1752(a)(1), as well as three other offenses (ECF No. 6)—not, as he claims, for trying to expose wrongdoing by others.  To the extent the defendant means to suggest that he has been improperly singled out for prosecution, moreover, any selective prosecution claim would be both meritless and, at this point, untimely.  As to the latter: the defendant's "right to confront accusers" gives him the right to cross-examine, at trial, the witnesses who are called by the government to testify against him.  It does not give him the right to "cross-examine" (or, for that matter, examine) any and all "actors he is accused of interacting with on January 6."