UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Complainant** | : | |
| | : | |
| v. | : | **Criminal Case No.** |
| | : | **1:21-cr-00191 (JEB)** |
| **RYAN ZINK,** | : | |
| | : | |
| **Defendant.** | : | |
| _____ | | |

### DEFENDANT RYAN ZINK'S REPLY TO THE
### UNITED STATES' OPPOSITION TO
### DEFENDANT'S MOTION FOR DISCLOSURE

Defendant RYAN ZINK ("Zink"), by and through undersigned counsel, hereby replies to the Government's Opposition filed by the U.S. Attorney's Office at ECF Dkt # 60 on July 3, 2023, to the Defendant's Motion for Disclosure of All Undercover Agents, Antifa Activists, and Confidential Human Sources Within the Sphere of Defendant's Alleged Conduct, filed at ECF Dkt. # 51, June 6, 2023.

I. **GOVERNMENT'S OPPOSITIONS HERE AND IN OTHER CASES REVEAL WIDESPREAD VIOLATIONS OF *BRADY V. MARYLAND* AND DISCLOSURE**

Initially, we should read and consider this and many dozens of other disputes as an admission by the U.S. Attorney's Office (USAO)'s for the District of Columbia that the USAO and investigative agencies like the Federal Bureau of Investigation (FBI) and U.S. Capitol Police (USCP) are violating their constitutional, statutory, and rules-based obligations under *Brady v. Maryland* and progeny and the Federal Rules of Criminal Procedure.

This problem is not limited to the instant motion, but is a candid revelation that the entire handling of all January 6 related cases has been constitutionally inadequate. It is likely that all January 6 cases, even those concluded, are subject to being vacated on appeal.

Because line prosecutors do not have the resources alone to review all of the candidate material, whatever instructions have been given to paralegals and other professionals at the U.S. Department of Justice's "Capitol Siege Unit" processing center will either lead to correct or disastrously erroneous results. The understanding of the requirements will dictate the instructions given to staff and the instructions will dictate the results. If the instructions given to reviewing personnel are bad, the entire process is bad, because they will not notice and flag for higher-level review the materials that are candidates for disclosure. The USAO's Oppositions indicate an erroneous understanding of the U.S. Government's obligations.

## II. REQUEST FOR DISCLOSURE IS NOT BASED ON ASSERTION OF WHETHER INFORMATION EXISTS

As in the eternal dance of discovery and disclosure in civil and criminal cases, a request for information is typically confused as an assertion of or debate about whether the information exists. A requesting party typically wants to make sure if there is any undisclosed information that would be material to their case. It might exist or it might not exist but a responsible advocate must ask and find out. It is not enough to simply speculate.

The usual response is to question the request as a claim that the documents, records, or information necessarily do exist. Here, if it later turns out that material or exculpatory information was withheld or suppressed, there can be significant consequences to this case and other concerns. But communicating early and clearly that Defendant is requesting certain disclosures pragmatically helps makes sure that the Government is on the lookout for such information and that the Defendant has actually asked. Processors should know what to look for.

And *Brady* jurisprudence creates a stronger obligation for what was explicitly asked for.

### III. MASSIVE PRESENCE OF GOVERNMENT AGENTS WITHIN JANUARY 6 EVENTS TURNS OUT TO BE ADMITTED NOT CONJECTURE

Actual USAO disclosures in the Proud Boys case of *United States v. Nordean*, Case No. 1:21-cr-00075, revealed that officers of the Metropolitan Police Department (MPD) of the City of Washington, D.C., and also agents of the U.S. Department of Homeland Security, as well as the FBI were undercover agents in the midst of demonstrators on January 6, 2021, as well as in surveillance and investigation leading up to January 6.[1]  Offices, agencies, and agents of the government who were directly involved in the events in question are subject to *Brady*.[2]

Time after time, the USAO came to defense counsel for Proud Boys Defendants – including a member of the undersigned law firm Roger Roots – and sheepishly admitted that witness after witness identified or called by Defendants' counsel were in fact Confidential Human Sources (CHS).  This is not conjecture.  These are the many admissions of the same "law firm," the same office of the USAO for the District of Columbia.  Wrecking havoc upon the scheduling predictions supplied to the presiding judge, the Honorable Timothy J. Kelly, the USAO waited until court had ended each day and the courtroom was cleared to approach Defendants' counsel in the hallway and say things to the effect "We… need to talk..."  Waiting until the last minute, usually the day before scheduled testimony advised to the trial judge there,

---

[1]  Jim Hoft, "20 CONFIRMED INCIDENTS AND OPERATIONS: The DOZENS of Feds, FBI Agents and State Operatives and Assets Who Infiltrated the Trump Crowds on January 6th at the US Capitol and Led the Protests," The Gateway Pundit, ar. 26, 2023, https://www.thegatewaypundit.com/2023/03/19-incidents-confirmed-dozens-federal-state-operatives-who/

[2]  Alan Feuer and Adam Goldman, "F.B.I. Had Informants in Proud Boys, Court Papers Suggest In filings in the seditious conspiracy case against members of the far-right group, defense lawyers claimed that information favorable to their clients was improperly withheld by the government until recently," New York Times, https://www.nytimes.com/2022/11/14/us/politics/fbi-informants-proud-boys-jan-6.htm l

the USAO revealed that witnesses called by Defendants' counsel were CHS's. Now, counsel seeks to avoid a repeat of this disruptive experience by asking early and on the record.

This repeated drama led veteran civil rights defense attorney Carmen Hernandez – no conservative of course – to announce in open court that she (as court-appointed counsel for Zachary Rehl) was not a CHS, as a light-hearted moment because so many participants in the January 6 were belatedly revealed by the Government to be CHS's.

In the Oath Keepers' trial of *United States v. Stewart Rhodes, et al.*, Case No. 1:22-cr-00015, the Vice President of the Oath Keepers was scheduled to testify, called *for* the Defendants, who then described having a heart attack (plainly a panic attack), refused to get on the airplane to D.C. for court, and <u>called the prosecutors</u>, not Defendant's counsel, about his situation. Pleadings filed by prosecutors then revealed that the Vice President of the Oath Keepers had been an FBI informant for many years, years prior to January 6.[3]

This practice of disclosure during the trial is disrespectful to a trial judge trying to keep the trial moving forward in an organized fashion but also damaging to the due process rights of Defendants. Where Defendants could have lined up alternate witnesses had they been timely informed, they were informed only the day before that their scheduled witness was working for the prosecution. How the Opposition can now describe this as conjecture is unclear.

---

[3]     Alan Feuer and Adam Goldman, "Informant Likely to Testify as Defense Witness in Oath Keepers Sedition Trial," November 8, 2022, The New York Times, https://www.nytimes.com/2022/11/08/us/politics/oath-keepers-trial-january-6.html  ("An F.B.I. informant who was embedded for months in the inner circle of Stewart Rhodes, the leader of the Oath Keepers militia, is likely to testify as a defense witness at the seditious conspiracy trial of Mr. Rhodes in connection with the attack on the Capitol on Jan. 6, 2021.")
    *See, also,* Jim Hoft,"EXCLUSIVE: DOJ DROPS A BOMB! Admits Federal Government Ran Informants Inside the Oath Keepers on Jan. 6 – Spring This On J6 Attorneys Less than One Week Before Trials," The Gateway Pundit, Sep. 22, 2022, https://www.thegatewaypundit.com/2022/09/exclusive-doj-drops-bomb-admits-federal-government-ran-informants-inside-oath-keepers-jan-6-spring-defendants-less-one-week-trials/

## IV. CONFIDENTIAL HUMAN SOURCES ARE NECESSARY, EXCULPATORY WITNESSES TO DEFENDANT'S INNOCENCE

Many of the prosecutions of January 6 related events – not all, but many – are of the nature of questioning whether or not a crime actually occurred with regard to a particular Defendant. The Government Opposition argues that disclosure of confidential human sources is limited: "The Supreme Court's decision in *Roviaro v. United States*, 353 U.S. 53, 59 (1957), has long established that an informer's privilege exists to further and protect the "public interest in effective law enforcement" and permits the government to withhold from disclosure the identify of individuals who "furnish information of violations of law to officers charged with enforcement of that law." *Id.* at 59.

This, however, is not that.

Here, most of the charged offenses concern whether or not there was a plan or conspiracy or intent such as to disrupt a Joint Session of Congress which had already been disrupted before Defendant arrived at the Capitol.

Depending on such planning or intent, with regard to some Defendants, there might be no crime. That is, certain events without the necessary intent would not violate the statute.

Here, the Government's Confidential Human Sources were tasked with monitoring many planning to come to Washington, D.C., on January 4-6, 2021. Yet none of them reported back to their handlers any conspiracy or plan to obstruct the official proceeding of the Joint Session of Congress. These are not informants who might have come forward with unexpected tips. These are agents of the U.S. Government at some level of formality who were specifically tasked with

finding out if anything criminal was being planned. Their answer: No.[4]

In both the Proud Boys' trial and the Oath Keepers' trial, every witness called by either the Government or the Defendants, including those who had pled guilty on promise of testifying for the Government, insisted that no plan existed to go the U.S. Capitol other than to attend the six (6) permitted demonstrations, attack the Capitol, enter the Capitol, take over the Capitol, or stop the Joint Session of Congress. Every witness insisted that demonstrators wanted the Joint Session of Congress to be held and to run its course so that objections from questioned States could be heard and resolved (they hoped) in Donald Trump's favor. Disrupting the Joint Session of Congress would be the worst possible outcome for Trump's supporters.[5]

Therefore, the fact that various agencies of the U.S. Government explicitly tasked their agents (of whatever type) to look for trouble leading up to January 6, and no such reports were provided to their handlers, becomes Sherlock Holmes' famous "The Dog That Didn't Bark."

The non-reports of these CHS's are exculpatory evidence that Defendant Ryan Zink is not guilty of most of the charges brought against him. The fact that those assigned to watch pro-Trump demonstrators did not report on any plans to attack the Capitol is directly material.

## V. ALL GOVERNMENT OFFICES, AGENCIES, OFFICERS, AND PERSONNEL MUST BE INCLUDED FOR CANDIDATE DISCLOSURES

But the USAO once again persists in rejecting the authority of this Circuit and the U.S. Supreme Court that candidate information and documents that may require disclosure are not limited to the files sitting on an assigned prosecutor's desk but include an obligation for "the

---

[4] Of course large crowds were known and expected, and warnings went out of likely ANTIFA violence within government channels.

[5] Dominick Mastrangelo, "**Trump adviser Navarro: Rioters on Jan. 6 hurt plan to challenge election result**," THE HILL, Jan. 5, 2022, https://thehill.com/homenews/588312-navarro-rioters-on-jan-6-hurt-plan-to-challenge-election-result

6

whole of government" to the extent that any agency or part of the U.S. Government or State or local Government was part of the investigation or part of the underlying events.

Binding precedent clarifies that parts of the government with no relevance to the case at hand are not within the scope. Yet any part of government that was involved in the underlying events or participated in the investigation of them or which the agency or the prosecutor has reason to suspect might have relevant information is subject to the obligation for disclosure.

Here the U.S. Congress and its statutory police force the USCP claim to be victims of the crimes charges relating to January 6, 2021. In their posture as victims as well as the primary (first, if smaller than the FBI) investigative agency, all documents and information known to the USCP and FBI are subject to disclosure regardless of whether in the prosecutor's hands.

1. Was the recording in the possession of the government?[6]

> The government acknowledges that its disclosure obligation extends beyond statements held in the prosecutor's office to statements in the possession of its investigative agencies. As with the due process claim, however, the government asserts that the Department of Corrections is not an investigative agency for this purpose.
>
> "[T]he duty of disclosure affects not only the prosecutor, ***but `the government as a whole, including its investigative agencies,'*** because the Jencks Act refers to evidence gathered by `the government,' and not simply that held by the prosecution." *Wilson v. United States*, 568 A.2d 817, 820 (D.C.1990) (quoting *United States v. Bryant*, 142 U.S.App. D.C. 132, 140, 439 F.2d 642, 650 (1971) ("Bryant I"), on remand, 331 F.Supp. 927, aff'd, 145 U.S.App. D.C. 259, 448 F.2d 1182 (1971) ("Bryant II")).
>
> In *Wilson* we applied *Brady* and *Jencks* requirements to the Washington Metropolitan Area Transit Authority (WMATA), where WMATA police were involved in the investigation and the case arose out of an attempt to enforce WMATA regulations[7]. 568 A.2d at 819-21; see also *Morris v.*

---

[6] Clearly referring to all levels of government.
[7] This doesn't fully explain that the prosecution arose out of "WMATA regulations" concerning a threatening showdown on a bus against a bus driver. WMATA security responded to the threatening situation but then turned the investigation over to the D.C. MPD.

*Washington Metro. Area Transit Auth.*, 251 U.S.App. D.C. 42, 44, 781 F.2d 218, 220(1986) (when the Metro Transit Police are involved, WMATA is considered a governmental entity); *Bryant I*, 142 U.S.App. D.C. at 140, 439 F.2d at 650 (tape recordings in the possession of the Bureau of Narcotics and Dangerous Drugs are in the possession of the government). Appellant urges that the Corrections Department should similarly be considered part of the government for disclosure purposes.

The case before us does not require that we go that far. **This case presents a narrower issue: whether the government has a duty to preserve evidence obviously material which, as the trial court found, the police knew or should have known about, and could have obtained if requested promptly from another government agency.** In *Brooks*, the Court of Appeals explained **courts' willingness to insist on an affirmative duty of inquiry on the part of the prosecutor, because an "inaccurate conviction based on government failure to turn over an easily turned rock is essentially as offensive as one based on government non-disclosure."** See *Brooks*, 296 U.S.App. D.C. at 222, 966 F.2d at 1503 (citing as an example *Calley v. Callaway*, 519 F.2d 184, 223 (5th Cir.1975) (*en banc*) (reflecting concern for "inherent fairness")). *Brooks* dealt with information that was already in the hands of the police department, albeit in a different unit than the one that investigated the case, and the law is clear that information in the hands of the police department is considered to be held by the "government" for *Brady* purposes. See *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555 (holding prosecutor's Brady obligation to disclose exculpatory evidence to defense applies to facts known to anyone acting on the government's behalf, including the police).

\* \* \*

**Even when the prosecutor does not know about certain evidence, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."** *Kyles*, 514 U.S. at 437, 115 S.Ct. 1555.

\* \* \*

**The government does not contend otherwise. Under these circumstances, we agree with the trial court that the police, as an integral part of the prosecution team, had an obligation to secure the tape recording. Thus, the tape recording was in the government's "possession" for both Jencks and Rule 16 purposes.**

*Robinson v. United States*, 825 A.2d 318 326-329, (D.C. 2003) *(paragraph break added for emphasis and bold emphases added).*

\* \* \* When WMATA is seeking to enforce its regulations or to protect its employees and involves its police force, however, the tort immunity

analysis is irrelevant in defining the obligation of the government to disclose evidence. Rather than look to the immunity analysis developed for different purposes, our focus in addressing the Jencks issue must be on the nature of the proceeding and the purpose of the Jencks Act.

**When the statement being sought by the defense as *Jencks* material is so closely intertwined with a prosecution arising out of an attempt to enforce WMATA regulations and protect a WMATA employee,** cf. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), **we conclude that production, upon request, is required.** See *United States v. Deutsch*, supra, 475 F.2d at 57. The prosecution arose as a result of Brady's efforts to assure that bus passengers paid their bus fares. He stopped the bus because some of the passengers were out of control, endangering further operation of the bus. The record suggests that calling his supervisor was the means by which he sought supervisory as well as police assistance.

*Wilson v. United States*, 568 A.2d 817 (D.C. 1990) (paragraph break added for emphasis and bold emphases added).

## VI.   OBJECTION TO TIMING IS NOT A VALID OBJECTION

The USAO also purports to object that if disclosure is required, that it might not be required yet.  That is not a valid objection.  The Government could have responded to the effect that "Disclosure will be made at the time required," rather than purporting to oppose the Defendant's motion entirely.  A belief that there is a later time at which the disclosure must be made is not a reason now for the Government to oppose the motion.

However, in fact, there is no blanket rule that disclosure in the middle of trial is adequate. It depends.  The purposes of disclosure include:

- Discovering witnesses that the Defendant might choose to call in his or her defense.

- Locating witnesses that the Defendant's legal strategy would have called.

- Understanding and analysis of the events that happened to help counsel prepare a defense for a Defendant.

- Preparing for effective cross-examination of the prosecution's witnesses.

Recall that the Sixth Amendment to the U.S. Constitution commands on this fundamental right that:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed; which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; ***to have compulsory process for obtaining witnesses in his favor;*** and to have the assistance of counsel for his defence.

*Id. (emphasis added).* Therefore, the Government's cavalier disregard for the right of the Defendant to learn and secure the attendance of witnesses in time to obtain a *subpoena ad testificandum* and to get it served on a witness violates the Sixth Amendment. Note that the Constitution specifically requires "compulsory process" not just a vain hope of calling witnesses. The Constitution is explicit in demanding that an accused must be afforded "compulsory process" for calling witnesses. This cannot be accomplished by Brady and Rule 16 disclosures made after a trial has already begun, nor even close to the start of a trial. Furthermore, the last minute disclosures promote a chaotic approach to trials even as counsel is attempting to get ahead of timetables.

Closely associated with the federal rule are several U.S. Supreme Court decisions which hold that a defendant has a right to the testimony of witnesses. *See, United States v. Dennis*, 384 U.S. 855 (1966); *United States v. Proctor & Gamble*, 356 U.S. 677 (1958).

> "Witnesses, particularly eye witnesses, to a crime are the property of neither the prosecution nor the defense. Both sides have an equal right, and should have an equal opportunity, to interview them."

*Gregory v. United States* 369 F.2d 185, 188 (D.C. Cir. 1966). See also, Model Code Of Prof'l Responsibility Rule 3.8(d).

> "Impeachment evidence, however, as well as exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is "evidence favorable to an Defendant," Brady, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend")."

*United States v. Bagley*, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985).

> "Impeachment evidence, however, as well as exculpatory evidence,

10

> falls within the *Brady* rule. See *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is "evidence favorable to an Defendant," *Brady*, 373 U.S., at 87, 83 S.Ct., at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend")."

*United States v. Bagley*, 473 U.S. 667, 87 L.Ed.2d 481, 105 S.Ct. 3375 (1985).

Determining usefulness can only be made by an advocate for the defense. *Id.* at 875. The trial judge's function is limited to determining if a case for production has been successful and supervising the process. *Id.*

## VII. DISCLOSURE OF DOCUMENTS, RECORDS, INFORMATION IS REQUIRED, NOT OFFERING OPINIONS

In short the Government's Opposition is misguided and without merit for the same reasons throughout all January 6 prosecutions and possibly all prosecutions in this District.

The USAO wants put the cart before the horse. The USAO is persistently evasive by changing the subject and offering distractions. We are not asking for the USAO's opinions.

First come the documents and records. Then opinions result from that analysis.

The USAO consistently has this backwards. The USAO in every case wants to present their opinions about the case as reasons why the Defendants don't need to see the documents. But "that's not how any of this works." The Government would have us just take their word for it. If the DOJ says that accused persons are guilty, that should be good enough for us.

Yes, there is a threshold showing that information would be "material" or potentially "exculpatory" (which is a very broad term including locating witnesses, preparing for cross-examination, exploring affirmative defenses, etc.) But the materiality is clear and the opinions

11

offered by the USAO do nothing to address materiality, but rather their theories of the case.

Again, if the application of the law shows that no disclosable information exists, then that outcome should be plainly stated. But the USAO is not telling us it has looked and found nothing. It is speculating and offering conjecture. The USAO is arguing why they don't even have to look to see. And we shouldn't look either. (And this attitude suggests that the personnel screening documents and videos have been improperly instructed on what to search for.)

The Defendant is entitled to disclosure. The Defendant is not obliged to adhere to the prosecutor's opinions about what might or might not be important to the Defendant's counsel's preparation for presenting a defense. It is not for the prosecutor nor the Court to decide for the Defendant what defense case he is permitted to advance. That is a constitutional right.

The Opposition argues that "Underpinning the defendant's motion is the unsupported conjecture that government actors—whether confidential human sources or undercover law enforcement—instigated the riot to entrap innocent participants."

However, it is the Government engaging in conjecture, not the Defendant. The motion for disclosure is not asking the Court to draw conclusions about documents or information that we have not yet seen. Analyses are the result of evidence, not a substitute for evidence.

The Government asks the Court to leap to conclusions about what we have not yet seen.

## VIII. LACK OF DISCLOSURE CAN REQUIRE REVERSAL

If an appeal court determines the suppressed evidence is material, that there is a reasonable likelihood the evidence could have impacted the jury's judgment, then a new trial is required. *United States v. Sitzmann*, 74 F.Supp.3d 128, 133-134 (D.D.C. 2014).

A Defendant must raise at least a colorable claim that the material contains evidence "favorable to him and material to his claim of innocence." *Id*.

"[S]uppression by the prosecution of evidence favorable to a Defendant upon request violates due process where the evidence is material to either guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Sitzmann*, 74 F.Supp.3d at 134 (*quoting Brady v. Maryland,* 373 U.S. 83, 87 (1963)).

With *Brady*, constructive knowledge matters. In *Youngblood v. West Virginia*, 547 U.S. 867 (2006) the Supreme Court made it clear that "a Brady violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the Brady duty to disclose extends to impeachment evidence as well as exculpatory evidence, and Brady suppression occurs when the government fails to turn over even evidence that is *'known only to police investigator and not to the prosecutor.'* 'Such evidence is material if "there is a reasonable possibility that had the evidence been disclosed to the defense, the result of the proceeding would have been different",' although a 'showing of materiality does not require demonstration by a preponderance of the evidence that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal.' The reversal of a conviction is required upon a 'showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'"

The requirements of *Brady are* very broad.  For instance, a "prosecutor must disclose information that is inconsistent with any element of any crime charged" and --

> "… must disclose information that either casts a substantial doubt upon the accuracy of any evidence---including but not limited to witness testimony—the prosecutor intends to rely on to prove an element of any crime charged, or might have a significant bearing on the admissibility of the evidence.  This information must be disclosed regardless of whether it is likely to make the difference between convictions and acquittal of the defendant for a charged crime."

<u>United States Justice Manual</u> USJMM) § 9-5.001.

13

The disclosure requirement, "applies to information regardless of whether the information subject to disclosure would itself constitute admissible evidence." *Id.* The Defendant is entitled to documents and evidence, to the extent potentially exculpatory*; See also, USA v Theodore F. Stevens*, No. 1:08-CR-00231-EGS, U.S. District Court for the District of Columbia, Memorandum and Opinion by Judge Emmett Sullivan, (Docket No. 257, December 22, 2008); *United States v. Sitzmann*, 74 F.Supp.3d 128, 133 (D.D.C. 2014)

An actual conviction can be overturned on appeal for violation of *Brady* if evidence favorable to the accused for exculpatory or impeachment purposes was suppressed by the government which prejudiced the accused. *Id*. Favorability to the accused means exculpatory or impeachment value. *Id.* Suppression by the government can be an intentional or inadvertent failure to disclose the evidence. *Id*. at 137. [8]

Courts in in this jurisdiction disfavor narrow readings by prosecutors as to their obligations under *Brady*. *United States v. Saffarinia*, 424 F.Supp.3d 46, 57 (D.D.C.), *supported by United States v. Paxson*, 861 F.2d 730, 737 (D.C. Cir. 1988).

When the Defendant requests <u>Brady</u> materials

> **"The government cannot meet its *Brady* obligations by providing the defendant with access to 600,000 documents and then claiming that the defendant should have been able to find the exculpatory information in the haystack."**

*Saffarinia*, 424 F.Supp.3d at 85.

Under *Brady*, it is relevant that the Defendant explicitly asked for specific information, not passively hoping that the prosecution will notice and think to disclose it:

> "The test of materiality in a case like *Brady* in which specific information has been requested by the defense is not necessarily the

---

[8] If the USAO withholds information that is later uncovered by Congress, whistleblowers, the media, FOIA, or other cases, any conviction in this case is vulnerable to being vacated.

14

same as in a case in which no such request has been made...."  [14]

*United States v. Agurs*, 427 U.S. 97, 106, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976)

" The heart of the holding in *Brady* is the prosecution's suppression of evidence, in the face of a defense production request, where the evidence is favorable to the Defendant and is material either to guilt or to punishment. Important, then, are (a) suppression by the prosecution after a request by the defense, (b) the evidence's favorable character for the defense, and (c) the materiality of the evidence.  * * *"

*Moore v. Illinois,* 8212 5001, 408 U.S. 786,794-795,  92 S.Ct. 2562, 33 L.Ed.2d 706 (1972)

"If there is a duty to respond to a general request of that kind, it must derive from the obviously exculpatory character of certain evidence in the hands of the prosecutor. But if the evidence is so clearly supportive of a claim of innocence that it gives the prosecution notice of a duty to produce, that duty should equally arise even if no request is made. Whether we focus on the desirability of a precise definition of the prosecutor's duty or on the potential harm to the defendant, we conclude that there is no significant difference between cases in which there has been merely a general request for exculpatory matter and cases, like the one we must now decide, in which there has been no request at all. The third situation in which the Brady rule arguably applies, typified by this case, therefore embraces the case in which only a general request for "Brady material" has been made."

*United States v. Agurs*, 427 U.S. 97, 107, 49 L.Ed.2d 342, 96 S.Ct. 2392 (1976).

 "The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt.[20] Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed."

*Agurs* at 112.

July 15, 2023                               **RESPECTFULLY SUBMITTED,**
                                            John M. Pierce, Esq.
                                            *Counsel for Defendant*

                                            _____*/s/ John Pierce*_____

                                            JOHN PIERCE LAW

21550 Oxnard Street 3rd Floor, PMB #172
Woodland Hills, CA 91367
jpierce@johnpiercelaw.com
(213) 279-7846

**CERTIFICATE OF SERVICE**

I hereby certify that my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

By and through:
Francesco Valentini, Esq.
United States Department of Justice, Criminal Division
Detailed to the D.C. United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
(202) 598-2337
francesco.valentini@usdoj.gov

　　　　　　　　　　　　　　　*/s/ John Pierce*
　　　　　　　　　　　　　　　John M. Pierce