# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Case No. 1:21-CR-191 (JEB) |
| : | |
| **RYAN ZINK,** : | |
| : | |
| Defendant. : | |

### THE UNITED STATES OF AMERICA'S OPPOSITION
### TO DEFENDANT'S REQUEST FOR FORMAL ISSUANCE
### OF SEALED AND CERTIFIED COPIES OF SUBPOENAS

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia and undersigned counsel, hereby opposes Defendant Ryan Zink's (hereinafter, "Zink") motion for an order to the Clerk of the Court to issue "formal copies with signature and seal affixed" of four subpoenas *duces tecum* attached to his motion. ECF 65. Zink's unusual request of the Clerk of the Court is purportedly to procure multiple copies of "certified and sealed" subpoenas for service on the Speaker of the United States House of Representatives and three Members of Congress.

Zink's request for certified or sealed copies of subpoenas with an original signature has no basis in law. Moreover, his motion fails to demonstrate any need for the relief he seeks or prejudice from its absence. Additionally, the subpoenas for which Zink seeks seals, certifications, and an original signature are not tailored to seek relevant, admissible evidence and lack the specificity required by Federal Rule of Criminal Procedure 17(c). This Court should decline to provide unnecessary and unsupported relief concerning subpoenas that fail to satisfy the exacting requirements of Rule 17. *See United States v. Fitzsimons*, 342 F.R.D. 18, 20 (D.D.C. 2022).

**I. Factual Background**

Defendant Zink stands charged with multiple offenses relating to his actions at the Capitol on January 6, 2021, including, Obstructing an Official Proceeding in violation of 18 U.S.C. § 1512(c)(2), Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(1), Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. § 1752(a)(2), and Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D). ECF 6. A jury trial is set to begin in this matter on September 5, 2023. April 4, 2023 Minute Entry.

At 1:00 p.m. on January 6, 2021, a Joint Session of the United States Congress convened in the Capitol Building to debate and certify the vote of the Electoral College for the 2020 Presidential Election. In advance of the certification vote, United States Capitol Police set up security barriers on the Capitol grounds.

With the Joint Session of Congress underway and with Vice President Mike Pence presiding, a large crowd gathered outside the building and within the restricted perimeter. At approximately 2:00 p.m., individuals in the crowd forced their way through, up, and over the barricades and the police, and the crowd advanced to the exterior façade of the Capitol building. Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the Capitol building. Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and the United States Senate, including the Vice President, were instructed to—and did— evacuate the chambers.

On January 6, 2021, Zink marched from the area near the Ellipse in Washington, D.C. to the Capitol. At approximately 1:45 p.m., Zink stood immediately outside the restricted grounds

on the east side of the Capitol. At approximately 2:00 p.m., other rioters violently breached the barricades marking the restricted perimeter in the vicinity where Zink had been standing. Zink then entered the restricted area, marched through the Plaza on the east side of the Capitol with other rioters, and proceeded up the stairs of the Capitol's Central East Portico.

While on restricted grounds near the Capitol building, Zink filmed a series of videos, some showing him in the midst of the crowd that was attempting to make entry into the Capitol building. In one video, Zink shouted into the camera, "We knocked down the gates! We're storming the Capitol! You can't stop us!" Zink then turned the camera to film the crowd around him. As he moved through the crowd at the bottom of the steps on the east side of the Capitol building, he began chanting, "We want Trump!" The defendant then shouted with his face to the video camera, "You all want to know how it's going? We are going to bum rush this shit!"

In a second video, Zink filmed fellow rioters trying to force the Capitol building's Rotunda doors open. As he filmed the rioters, he said, "They're not going to get this one." In a third video, Zink shouted into the camera, "You wanted to see what it's become? We're in the doors!" Toward the end of that video, Zink turned the camera to capture another rioter smashing a window near the Rotunda doors.[1] Later in the afternoon of January 6, the defendant was also present within the restricted grounds on the Capitol's west side.

## II. Request for Certified Copies

In advance of trial, counsel for Zink proposes that the Clerk of the Court issue "formal subpoenas under seal" or "certified" subpoenas to elected officials in the legislative branch of the government, including the Speaker of the House and three Representatives. Zink has already

---

[1] That individual, Hunter Ehmke, has since been charged, convicted, and sentenced for his actions on January 6, 2-21. See *United States v. Hunter Ehmke*, No. 1:21-cr-29 (D.D.C).

obtained trial subpoenas with the printed seal and signature of the Clerk or Deputy Clerk of the United States District Court for the District of Columbia. ECF 65-1, 65-2, 65-3, 65-4. As far as counsel for the United States can determine, the subpoenas attached to Zink's motion have not yet been served. Zink's motion asks for what he characterizes as "routine processing" of four trial subpoenas; however, his request is in no way routine. Zink points to no authority, and the United States is aware of none, in the Rules of Criminal Procedure, the Local Rules, the Criminal Code, or in case law in support of his request for the Clerk of the Court to issue copies of Rule 17 subpoenas filled out by Zink with an original signature or additional "seals" or "certifications."

Pursuant to Federal Rule of Criminal Procedure 17(a) "…the clerk must issue a *blank* subpoena—signed and sealed—to the party requesting it, and that party must fill in the blanks before the subpoena is served." *Id*. (emphasis added). Notably, the subpoenas Zink has attached to his motion, ECF 65-1, 65-2, 65-3, and 65-4, all bear the preprinted signature and seal of the Clerk or the Deputy Clerk of the Court. Thus, Zink has already obtained subpoenas available as a matter of routine that are consistent with the provisions Rule 17(a). Nevertheless, he asks for more, and his request is not routine.

At most, Zink refers broadly to "local rules" as supposed authority for his request to have the Clerk of the Court issue "formal copies" of subpoenas with "signature and seal affixed" because he "would like to present originally signed and/or sealed and/or certified subpoenas to assist Members of Congress" and "do the formal procedures right." ECF 65 at 1, 4. However, he does not identify a specific Local Rule as authority for the Clerk of Court to comply with his unusual and wholly unsupported request. The United States is not aware of any such local rule in this district. Zink does not explain why or establish that any Member of Congress served with a subpoena would need unspecified assistance with a subpoena or why an original signature or

certification or additional seal would assist the recipient of the subpoena in any way. The House of Representatives has no rule or requirement for service of an originally signed or certified subpoena bearing an original signature and seal; such additions will not impact how any Member of the House responds to service of Zink's subpoena.

In short, Zink's motion fails to establish any basis for relief or even a justiciable claim. *Compare Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (for standing to seek relief, party must establish an injury in fact, a causal connection between the injury and a party likely to be before the Court, and a likelihood, as opposed to mere speculation, that the injury will be redressed by a favorable decision). Zink shows no injury; he has already obtained the signed, sealed, trial subpoenas used by counsel in criminal cases, as the attachments to his motion establish. In the absence of an injury, he cannot show that a favorable ruling on his motion will redress an injury. He does not show a connection between any conduct by the Clerk of the Court and any injury or harm, because his motion identifies no injury or harm. His motion should be denied because in addition to its lack of legal support, it identifies nothing that merits relief.

### III. The Subpoenas At Issue Fail To Satisfy The Requirements Of Rule 17(c)

An additional reason for this Court to deny relief is that the subpoenas Zink seeks to embellish conflict with the requirements of the rule governing his request. Federal Rule of Criminal Procedure 17(c)(2) precludes enforcement of a subpoena if compliance would be "unreasonable or oppressive" and a court may quash such a subpoena. Indeed, several courts have stated that it is the court's responsibility to make sure that a trial subpoena is for a proper purpose and complies with the requirements of Rule 17(c). *E.g., United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. 2020); *United States v. Vasquez*, 258 F.R.D. 68, 72 (E.D.N.Y. 2017) ("the court has an independent duty to review the propriety of the subpoena"); *United States v. Hankton*, No. 21-1,

2014 WL 688963 at *2 n.1 (E.D. La. Feb. 21, 2014) (court was obligated to assess each subpoena for compliance with Rule 17).

Pursuant to Federal Rule of Criminal Procedure 17(a), a party is permitted to subpoena a witness, and pursuant to Rule 17(c)(1) to subpoena books, papers, documents, data, or other objects. Here, Zink's subpoenas require the Speaker of the House of Representatives and Members of Congress to testify and produce voluminous communications, documents, and video footage, held by Capitol police and personnel and involving certain Executive Branch agencies. The subpoenas use vague and impermissibly broad language, such as, "any and all communications," and "related to or concerning" for a variety of topics, as follows:

> Any and all videos relating to events of Jan. 6, 2021, compiled by the U.S. Capitol Police or House Select Committee re: January 6. Any and all communications from the USCP, Sergeant at Arms, Speaker, FBI, and/or Secret Service created 1/5 to 1/19/2021, relating to or concerning (1) plans to resume the Joint Session of Congress on 1/6/202 (*sic*) after disrupted, (2) why, when, and by whom a recess of the Joint Session of Congress was decided or recommended in the early afternoon of 1/6/2021, (3) any effect from the discovery of pipe bombs near Capitol Hill on 1/6/2021 upon the Joint Session, (4) when the decision to recess Congress started, that is when the cause for the recess first existed.

ECF 65-4, Subpoena to Jim Jordan.[2] *See United States v. Shanahan*, 252 F.R.D. 536 (E.D. Mo. 2008) (as a general rule, requests for any and all documents are emblematic of a discovery request or fishing expedition; trial subpoenas should not be worded in open-ended terms); *United States v. Mendinueta-Ibarro*, 956 F.Supp.2d 511, 513 (S.D.N.Y. 2013) (trial subpoenas seeking any and all materials without mention of specific admissible evidence justify inference that defense is engaging in prohibited fishing expedition); *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan.

---

[2] The subpoenas directed to Speaker McCarthy and Representative Jordan contain the language quoted above requiring production of videos. ECF 65-2, 65-4. The subpoenas directed to Representatives Greene and Gaetz do not seek production of videos but otherwise match the language in the other subpoenas for production of communications. ECF 65-1, 65-3.

1994) (subpoenas using terms such as "any and all documents" unquestionably resembled discovery requests and such terms were indicia of a fishing expedition).

To require production using a Rule 17(c) subpoena, the moving party must meet a three-part test established by the Supreme Court in *United States v. Nixon*, 418 U.S. 683, (1974), by establishing: (1) relevancy, (2) admissibility, and (3) specificity. *Id*. at 698, 700 (setting requirements in case involving subpoena for production of Watergate tapes prior to trial). "The burden of satisfying the 'exacting standards' of the three-part *Nixon* test falls 'on the party requesting the information.'" *United States v. Fitzsimons*, 342 F.R.D. 18, 20 (D.D.C. 2022), quoting, *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386–87 (2004). In *Fitzsimons*, the Honorable Rudolph Contreras applied the *Nixon* test to a subpoena, like those attached to Zink's motion, calling for production of documents on the date the trial was scheduled to start. Here, because Zink's subpoenas do not meet any of the three prongs of the *Nixon* test, this Court should decline to grant relief apparently sought to bolster the appearance of the subpoenas.

**A. Relevance**

Zink appears to be searching for an alternate reason for the suspension of the Joint Session of Congress through testimony of the Speaker of the House of Representatives and other Members of Congress, or through records of various communications, so that he can argue that his criminal conduct, including entering restricted Capitol grounds and obstructing Congress's certification of the Electoral College vote, did not constitute an offense.  An accused is entitled to present a defense to the charges against him, but any defense is subject to evidentiary limits. One such limit is Federal Rule of Evidence 402, which prohibits the defendant from introducing irrelevant evidence. Tangential subjects, such as communications regarding the suspension of the Joint Session to certify the Electoral College vote, have no relevance to Zink's intent to disrupt official

proceedings, or to enter and remain on restricted Capitol grounds. Even if it is assumed that the Speaker of the House or one of its other Members would testify that at certain times on January 6, 2021, the Joint Session to certify the Electoral College vote was suspended for reasons unrelated to the attack on the Capitol, such testimony would have no bearing on Zink's accountability for his criminal conduct that day. Zink could not have been privy to communications by members of Congress on or before January 6, and even if he were, such communications are wholly irrelevant to Zink's intent to obstruct Congress and unlawfully trespass within the restricted area around the Capitol.

Moreover, a defendant cannot meet the relevance requirement of Rule 17 by articulating what he hopes to find in the subpoenaed material. *Fitzsimons*, 342 F.R.D. 18, at 21. Zink's subpoenas demand, for example, production "of any and all videos relating to events of Jan. 6 2021, compiled by the U.S. Capitol Police or House Select Committee re January 6." There are hundreds if not thousands of such videos if footage from the Capitol's surveillance cameras is included. Zink does not offer any insight concerning the relevance of a single video he demands. In contrast, in *Nixon*, the Supreme Court enforced a subpoena for production of tapes where the Special Prosecutor had made "a sufficient preliminary showing that *each of the subpoenaed tapes* contains evidence admissible with respect to the charges in the indictment." *Id*. at 700 (emphasis added). Even if an alternative reason for the suspension of congressional proceedings on January 6, 2021 were relevant, Zink fails to make even a preliminary showing that such evidence exists within any of the materials he seeks to subpoena.

Indeed, it is a firmly settled principle that Rule 17(c) is "not intended to provide a means of discovery for criminal cases." *See United States v. Nixon*, 418 U.S. 683, at 698–99, citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220, (1951)). Courts have broadly rejected

attempts to use Rule 17(c) subpoenas as a discovery device. *United States v. Haldeman*, 559 F.2d 31, 75 (D.C. Cir. 1976) ("Rule 17(c) ... is not a discovery device ...."); *United States v. Cuthbertson*, 630 F.2d 139, 144 (3d Cir. 1980) ("The test for enforcement is whether the subpoena constitutes a good faith effort to obtain identified evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device."); *United States v. Libby*, 432 F.Supp.2d 26, 34 n. 8 (D.D.C. 2006) (argument that material sought through trial subpoena would allow defendant to identify other witnesses clearly revealed that defendant was on a discovery fishing expedition which was an impermissible use of Rule 17); *United States v. Fitzsimons*, 342 F.R.D. 18, at 20. (Subpoenas are unreasonable and oppressive in scope if they far exceed the scope of permitted discovery pursuant to Federal Rule of Criminal Procedure 16). Extensive video footage has already been produced to Zink through discovery, yet he has made no showing that the additional materials and video footage he seeks would have any relevance to his defense.

Therefore, Zink's proposed subpoenas do not satisfy the first prong of the test established by *Nixon* for relevance. At best, he speculates that Congress' Joint Session was suspended on January 6, 2021, for a variety of reasons independent of the offenses charged; however, such speculation fails to establish relevance of the voluminous materials he seeks to subpoena. Absent satisfaction of *Nixon*'s relevance requirement, this Court should decline to grant a motion seeking to needlessly enhance a subpoena that fails to comply with Rule 17.

### B. Admissibility

Pursuant to the test established by *Nixon,* the proponent of the subpoena must, as noted above, make "a *sufficient preliminary showing*" that the specific evidence sought, if relevant, will also be admissible. *United States v. Nixon, 418 U.S. 683,* at 700. (emphasis added). Here, Zink has not put forward a preliminary showing that the broad categories of evidence and testimony

that he seeks from Congress and other agencies will be admissible. Instead of granting a motion that would even arguably promote service of Zink's subpoenas, this Court should decline to provide the relief Zink seeks in the absence of any showing that subpoenaed materials would be admissible, and that the subpoenas are proper. *See United States v. Cuthbertson*, 651 F.2d 189, 195 (3d Cir. 1981) (Rule 17 subpoena quashed where neither party could establish how materials containing possible inconsistent statements of witnesses would be admissible as evidence); *Cf., United States v. LaRouche Campaign*, 841 F.2d 1176, 1180 (1st Cir. 1988) (a third-party subpoena for specific video outtakes was not quashed where there was a showing that it would likely reveal inconsistent statements and bias against defendants).

Zink must show a reasonable likelihood that the vague and overly broad categories of documents and testimony he lists in his subpoenas, including thousands of hours of videotape, "communications," "plans," and "related information" will contain admissible evidence, and that these subpoenas are not simply an expansive fishing expedition. Here, the plans and communications of members of Congress relating to interruption of the Joint Session taking place on January 6, 2021, and other possible reasons for the interruption, are completely tangential and inadmissible in the case before the Court which concerns only Zink's conduct and intent. Zink's subpoenas also conflict with the Constitution's Speech and Debate Clause, which provides that "for any Speech or Debate in either House they [The Senators and Representatives] shall not be questioned in any other Place." U.S. Const. art. I § 6. Accordingly, additional reason exists to reject Zink's assertion that his subpoenas seek evidence that will be admissible.

### C. Specificity

In addition to relevance and admissibility, the final hurdle of the *Nixon* test for a Rule 17(c) subpoena is specificity. Zink's proposed subpoenas do not identify the testimony and documents

sought with reasonable specificity, but instead refer to "any and all communications" and "related" documents, not only from the Speaker of the House of Representatives and Members of Congress, and also from the United States Capitol Police, the Sergeant at Arms, the Federal Bureau of Investigation, and the Secret Service. A party seeking a Rule 17(c) subpoena must identify with specificity the documents being sought through, "rational inferences, that the documents being sought contain relevant and admissible evidence." *United States v. Libby*, 432 F.Supp. 2d 26, 31 (D.D.C. 2006). Subpoenas, like the ones at issue here, for broad categories of documents are not permitted. "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought, but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused." *Id.*, quoting, United *States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D.Fla.1991). Rule 17(c) subpoenas are simply not intended as a method to seek discovery in criminal cases.

As a matter of common sense, it is not logical to support a subpoena that does not call for production of relevant, admissible, or specific evidence. It makes little sense to support a subpoena that, if served, will conflict with the prohibitions of the Speech and Debate Clause. Because Zink fails to make even a preliminary showing that his subpoenas will produce admissible evidence, this Court should reject his unsupported application for unnecessary embellishments to subpoenas that, if served, will almost certainly result in a motion to quash.

**IV. Conclusion**

For the foregoing reasons, the relief requested by Defendant Ryan Zink for the issuance of "sealed" and "certified" copies of subpoenas with an original signature should be rejected because the request lacks a legal basis. Additionally, because Zink fails to satisfy any of the three prongs of the *Nixon* test, his subpoenas fail to comply with the requirements of Rule 17 and therefore, this

Court should decline to provide unnecessary relief that will only serve to embellish invalid subpoenas. His motion should be denied.

                                      Respectfully submitted,

                                      MATTHEW M. GRAVES
                                      United States Attorney
                                      D.C. Bar No. 481052

By:                           */s/ Cari F. Walsh*
                                      CARI F. WALSH
                                      Assistant U.S. Attorney
                                      M.O. Bar No. 37867

                                      HOLLY F. GROSSHANS
                                      Assistant U.S. Attorney
                                      D.C. Bar No. 90000361

                                      United States Attorney's Office
                                      for the District of Columbia
                                      601 D Street, NW
                                      Washington, D.C. 20530
                                      Phone: (202) 252-6737
                                      Cari.Walsh@usdoj.gov
                                      Holly.Grosshans@usdoj.gov