UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Complainant** | : | |
| | : | |
| v. | : | **Criminal Case No.** |
| | : | **1:21-cr-00191 (JEB)** |
| **RYAN ZINK,** | : | |
| | : | |
| **Defendant.** | : | |

_____

**DEFENDANT RYAN ZINK'S MOTION IN LIMINE TO EXCLUDE
FBI "HEARSAY AGENTS" AND INCLUDED MEMORANDUM OF LAW**

Defendant RYAN ZINK ("Zink"), through the undersigned counsel, John L. Pierce, Esq. presents this Motion and Memorandum of Law and hereby moves the Court to exclude from the proceedings at trial any testimony, derivative evidence, references to or argument upon the following matters.

Initially, Defendant notes for consideration that simple motions in limine are no more burdensome nor difficult than an evidentiary objection made during the questioning at trial, but (a) a written motion in limine avoids any confusion in the give and take of trial that the Defendant is lodging an evidentiary objection and not waiving the rules of evidence, (b) a motion in limine provides the benefit of alerting the opposing counsel to an evidentiary objection earlier than during the questioning of a witness and offers the chance to adapt before trial, (c) presents a clear record for any review of the matter on appeal, that is not merely the disposition of the motion but the underlying rule of evidence and admissibility of proposed evidence on appeal.

Defendant recognizes that sometimes motions in limine are used in more complex ways

but here Defendant merely asserts the Federal Rules of Evidence. Defendant understands that the Government may protest prejudice, but Defendant argues that the Government cannot complain of having disregarded the well-known Federal Rules of Evidence. Defendant, by counsel, is aware that the hearsay rules have been too often ignored with regard to FBI "case agents" making it important to reassert the well-established rules of hearsay. But the fact that the Government has too often used FBI "case agents" as end runs around the rules against hearsay does not provide grounds now for surprise or prejudice to the Government.

Finally, the Court and the Government is asked to clearly notice and keep in focus that the Defendant is not objecting to the existence of FBI "case agents" or the internal organization of the FBI or any legitimate involvement, participation, or use of FBI "case agents." This motion in limine is narrowly focused on the use of case agents to introduce otherwise inadmissible purported evidence in violation of the Federal Rules of Evidence. (For example, Defendant does not object to one lead FBI case agent serving at the prosecutors' table as representative of the U.S. Government if the Government makes that designation, consult with prosecutors, etc. It is only the disregard of hearsay rules that is the objection.)

**I.   MOTIONS IN LIMINE**

Of course, most if not all of the Rules of Evidence can be waived if no one objects. Therefore, Defendant Zink is careful to object, early, often, and clearly by objecting in advance. There should be no misunderstanding in the crush, rush, and busy-ness of trial that Defendant Zink does not waive these rules of evidence or objections.

A. **MOTION TO EXCLUDE FBI "CASE AGENT" OR "HEARSAY AGENT" TESTIMONY**

In every prosecution trial relating to January 6 so far, the prosecution has relied very heavily on the testimony of "case agents" from the FBI, which are becoming well-defined as a lead FBI agent who has no first-hand knowledge of anything but merely reads the case file into the record before the jury.

These would be more correctly labeled as FBI "hearsay agents" to violate hearsay rules. They dutifully read and report what other agents or informants– who are not present in the courtroom – assert to be true, for the truth of the matters asserted, by claiming that someone else told them what they heard from someone else who heard it from yet another person.  None of this qualifies as evidence.

That is the very point of these FBI "hearsay agents" is to introduce assertions into the jury's consideration for the truth of the matters asserted with no knowledgeable person in court, no one having sworn to the truth of the matters asserted (since the FBI agent is merely repeating what someone else said, that someone else said, that someone else said – all not under oath).

The use of "case agents" are sold as necessary to put the evidence independently and properly admitted into the case into context, in the manner of a demonstrative exhibit.  That is, the evidence must already be properly admitted apart from the "case agent" or "hearsay agent." But that is not what the Government is doing.

Defendant does not contest proper documentary exhibits or sometimes testimony (far less likely to qualify or be useful) which helps the jury understand the inter-relationship among facts already admitted into evidence in compliance with the Federal Rules of Evidence.  That is, following proper admission of evidence into the record of what events occurred, a context witness could explain the timeline of how those events occurred over time.  But the context

witness could not introduce facts not already properly admitted into evidence.

In fact, however, the FBI "hearsay agent" merely reports second-hand, third-hand, fourth-hand, or worse hearsay or mere rumor, innuendo, gossip, or speculation.

### B. DEPRIVING DEFENDANTS OF THE RIGHT OF CROSS-EXAMINATION

The severe abuse of the hearsay rules of evidence become most clear when the FBI agent is cross-examined. Cross-examination is blocked, in violation of the Sixth Amendment, because the FBI "hearsay agent" does not know anything about the evidence presented. The agent cannot answer questions about the purported evidence, because he or she is merely reading in court the statements written in the file by others, who are summarizing information from yet other, from sources who themselves are lacking in any first hand knowledge.

### C. EXCUSES OFFERED FOR "HEARSAY AGENTS"

To evade the hearsay rules, FBI "hearsay agents" are called to describe how they felt or how other people felt or express the FBI agent's opinions. Their personal, unfounded, subjective opinions are offered in lieu of evidence on the excuse that their opinion explains the significance of other evidence. But such "context" remains what it always was: Subjective opinion.[1]

This is often closely related to the Government's practice of telling the jury what the Defendant was thinking or what the Defendant "really" meant based on case agents who likely have never met the Defendant for a moment of their lives.

---

[1] And not lay person opinion, but purely subjective feelings. The Rules might sometimes allow a law person version of an expert witness opinion. For example, an expert witness might testify that under the weight, weather, road condition, traffic conditions it should have taken the car assuming good brakes 127.5 feet to come to a complete stop if not exceeding the posted speed limit. A lay person might testify "I don't know, but it sure seemed to me as a driver of 40 years that the car should have been able to stop in time not to hit the lady in the crosswalk." But these opinions are nothing of that sort. These are opinions such as "I just feel that the Defendant's behavior was horrible and the harm was really bad and should never happen again."

### D.  GOVERNING LAW

### Federal Rules of Evidence Rule 602 – Personal Knowledge

#### FRE Rule 602 requires that:

A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony. This rule does not apply to a witness's expert testimony under Rule 703.

### Federal Rules of Evidence Rule 802 – Rule Against Hearsay

#### FRE Rule 802 requires that:

Hearsay is not admissible unless any of the following provides otherwise:
- a federal statute;
- these rules; or
- other rules prescribed by the Supreme Court.

### *United States v. Glover,* 872 F.3d 625 (D.C. Cir. 2017

In *Hampton,* we explained that consistent with Federal Rule of Evidence 701, a case agent may only testify about "interpretations" of recorded statements of defendants if he "identifie[s] the objective bases for his opinion" such that the jury can assess his testimony and that testimony is helpful to the jury, rather than merely "tell[ing] it in conclusory fashion what it should find." 718 F.3d at 981 (quotation marks omitted).

***Interpretations based on "knowledge of the entire investigation" are not permissible lay opinion testimony,*** since "the jury ha[s] no way of verifying his inferences or of independently reaching its own interpretations" of any recordings not before them. Id. at 983. ***Rule 701 accordingly requires both that the witness identify and the jury have access to the bases for the witness's opinion and that the witness refrain from merely directing the jury to draw certain inferences on those bases***.

In this case, it is clear that counsel performed deficiently in failing to challenge lay opinion testimony by Bevington that violated Rule 701. Counsel initially objected to the testimony that Bevington was likely to

> offer before the witness took the stand, and the District Court directed counsel that it would be amenable to objections of that nature, should counsel object "line by line" to any problematic testimony. See Trial Tr. 8:20, 10:11–13 (Feb. 19, 2008, Afternoon Sess.). The District Court explained its "inbred dislike of having a government agent trying to tell the jury what a tape means" and its underlying concern about "how [the case agent is] going to have a better sense that a hair dryer means drugs than I would.... If the jury doesn't listen to the tapes and agree with you, Officer Bevington isn't going to make one bit of difference." Id. at 10:1; 9:5–7; 12–13.

*United States v. Glover,* 872 F.3d 625 (D.C. Cir. 2017) *(emphasis added).*

### *United States v. Hampton*, 718 F.3d 978, 981-984 (D.C. Cir. 2013).

In *United States v. Hampton*, 718 F.3d 978 (D.C. Cir. 2013), this Circuit rejected the use of FBI "case agents" in the manner in which they have been rampantly used in January 6 criminal prosecutions. However, the DoJ never seems to learn from being chastised by appellate courts, but keeps on repeating the same rejected techniques:

> FBI Agent Bevington was a key witness against Hampton at trial. The government did not attempt to qualify him as an expert witness under Rule 702 of the Federal Rules of Evidence. Instead, he was called as a lay witness. Agent Bevington testified that he had 20 years of FBI experience at the time of this trial, including more than 100 drug investigations and more than 50 investigations with court-ordered wiretaps. With respect to Glover's drug operation, Bevington testified that he was the case agent—the supervisor of the FBI agents conducting the investigation. In that capacity, he monitored wiretaps, performed physical surveillance, provided daily reports to the United States Attorney's Office, and supervised other personnel monitoring the wiretaps. He also testified that he had reviewed every conversation—some 20,000—captured by the wiretaps, not just the 100 or so recordings admitted into evidence. The government put Bevington on the stand five times during the trial, usually to give the context and an explanation of recorded statements admitted into evidence. ***As the government told the jury during its opening statement, the recorded telephone calls were "very, very cryptic," and the government used Bevington to interpret them for the jury.***

Federal Evidence Rule 701 permits lay testimony in the form of an opinion when it meets the following criteria: it must be rationally based on the witness's perception and helpful to the jury in understanding the witness's testimony or the determination of a "fact in issue," ***and may not be based on the kind of specialized knowledge possessed by experts within the scope of Rule 702.***[1] We review the district court's admission of evidence for abuse of discretion. *United States v. Williams*, 212 F.3d 1305, 1308 (D.C.Cir.2000).

When there has been a proper objection, the district court of course must determine whether the lay witness's opinion testimony satisfies Rule 701's requirements. See Williams, 212 F.3d at 1309–10 & n. 6;see also 29 Charles Alan Wright, Kenneth W. Graham, Jr., Victor James Gold & Michael H. Graham, Federal Practice and Procedure: Evidence §§ 6254, 6255 (1997 & Supp. 2013); Anne Bowen Poulin, Experience–Based Opinion Testimony: Strengthening the Lay Opinion Rule, 39 Pepp. L.Rev. 551, 595–96, 610–11 & n.227 (2012).

Jurors too must independently assess the basis of the opinion and scrutinize the witness's reasoning. But "[w]hen a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of Rule 701, first because there is no way for the court to assess whether it is rationally based on the witness's perceptions, and second because ***the opinion does not help the jury but only tells it in conclusory fashion what it should find.***" *United States v. Rea*, 958 F.2d 1206, 1216 (2d Cir.1992). Enforcement of Rule 701's criteria thus ensures that the jury has the information it needs to conduct an independent assessment of lay opinion testimony. Judicial scrutiny of a law-enforcement witness's purported basis for lay opinion is especially important because of the risk that the jury will defer to the officer's superior knowledge of the case and past experiences with similar crimes. *United States v. Grinage*, 390 F.3d 746, 750–51 (2d Cir.2004).

Here, the district court's failure to enforce Rule 701's boundaries on lay-opinion testimony denied the jury the information it needed to assess the FBI agent's interpretations of recorded statements.

* * *

The prosecutor asked Agent Bevington what he thought Glover meant when he said to Hampton during a phone call, "[s]o a boy

come pick me up, then I had to ride around with him, when I see you I'm gonna tell you everything been going on, I just man you talking about a hectic [expletive deleted] day." [2] The court overruled Hampton's objection and explained, "I think that there is sufficient basis on the record with the sequence and the contents of each of these phone calls, and Agent Bevington has experience in this case from reviewing all of the thousands of phone calls and understanding, so he can talk about his opinion as to what he believed they were discussing when he says that." The agent testified that he believed the statement indicated that Glover was planning to tell Hampton, when they met in person, that on the previous day police had executed a search warrant on the home of one of Glover's lieutenants and had seized PCP there.

On cross-examination, defense counsel challenged the basis for that opinion. The agent defended his testimony, stating, "There is more to it based on other activations on the phone and in the truck," and "it is based on other conversations." When asked if someone else could understand the statement differently, Agent Bevington replied, "If they just had this portion of the conversation and didn't know other things about the investigation and other conversations, maybe. But I think—anybody who has listened to all of the calls and is aware of all of the conversations would agree with me."...

**When an agent, particularly a case agent**, see *United States v. Dukagjini*, 326 F.3d 45, 53–55 (2d Cir.2003), ***provides interpretations of recorded conversations based on his "knowledge of the entire investigation," " the risk that he was testifying based upon information not before the jury, including hearsay, or at the least, that the jury would think he had knowledge beyond what was before them, is clear."*** *Grinage*, 390 F.3d at 750;see also *United States v. Garcia*, 413 F.3d 201, 213–15 (2d Cir.2005). The *Grinage* court held that the agent's interpretation of conversations in that case was not a permissible lay opinion under Rule 701 "because, rather than being helpful to the jury, ***it usurped the jury's function***." 390 F.3d at 751.

* * *

We draw further support for our conclusion from cases discussing the government's use of summary or overview witnesses at trial, the analysis of which, we have noted, approaches the question presented here but from a different perspective. See *United States v. Moore*, 651 F.3d 30, 57

(D.C.Cir.2011) *(per curiam)* (citing *Garcia*, 413 F.3d at 211–17); see also *Garcia*, 413 F.3d at 214–15; *United States v. Casas,* 356 F.3d 104, 117–20 (1st Cir.2004). There is an overarching concern in that context with a witness using, as the basis for his opinion, evidence outside the record. ***"Such testimony raises the very real specter that the jury verdict could be influenced by statements of fact or credibility assessments in the overview but not in evidence."*** *Moore*, 651 F.3d at 57 (quoting Casas, 356 F.3d at 119–20) (brackets omitted).

* * *

"For all of these reasons, we agree with *Hampton* that the district court abused its discretion in allowing Agent Bevington's opinion testimony in violation of Rule 701.[3]..."

*United States v. Hampton*, 718 F.3d 978, 981-984 (D.C. Cir. 2013).

### E. ARGUMENT

Therefore, there is no special status carved out in the law or the rules for whatever titles the FBI wishes to use internally.  <u>Here, most relevant to the case at bar, the Government there designating and calling the "case agent" as a witness offered no special rights or special category to the Government.</u>  **The Circuit was unimpressed by titles but applied the Federal Rules of Evidence the same to "case agents" as to anyone else.**

Specifically, we have observed as a chronic over-indulgence in January 6 related trials FBI "case agents" who have no knowledge of what they testify to in violation of Federal Rules of Evidence Rule 602 (which Rule contains no discretion or subjectivity available to a trial judge).  Several times in trials of other cases from January 6, 2021, "case agents" have testified to assertions about which they have no knowledge and then when cross-examined admit on the witness stand, under oath, that they have no knowledge of the assertions to respond to questions on cross-examination.  These are not witnesses.  They are merely reading from documents in the file.  They might be compared to what the British call "news readers" on television news, in

which an on-air anchor is simply handed a script to read without any personal investigation.

Nor are these case agents qualified as experts. Some likely could be based on their backgrounds. But the Government did not designate or establish them as experts.

This adds to the problem that the FBI case agent, consciously or unconsciously, will add opinion dressed up as conclusions of the investigation, hinting (wink, wink, nod, nod) on evidence that is not admitted into evidence and is not before the jury. Their testimony is as if to say "If only you'd seen what I've seen" but "just trust me on this one."

The use of such "hearsay agents" is a direct attack upon the Constitutional rights of Defendant(s) to confront (cross-examine) their accusers, to explore the basis or reliability of the asserted information, or seek clarification of the assertions by cross-examination.

Finally, the entire exercise of the USAO presenting "context" is intended to violate the due process requirements of proving the individual guilt of individual Defendants beyond a reasonable doubt. The "context" asserted is an argument (during the evidentiary portion of the trial) that everyone is collectively guilty and the Defendant(s) are guilty by association or by being near to those who actually committed crimes. The project of showing "context" becomes in reality in these cases a break-down of due process.

For example, the Government shows this "context" through FBI "hearsay agents" by showing events and videos in which the particular Defendant(s) at bar do not appear.

Videos of events in which the Defendant(s) at bar did not participate and videos of other people, not including the Defendant(s) at bar, serve no legitimate function. They are an appeal to an anti-American collectivist legal philosophy.

A few key protections the Court should order, though not entirely adequate alone, would be to order the Government not to put on videos or photographs in which the Defendant(s) at bar

are not visible nor nearby in the same area, not to describe events in which the Defendant(s) at bar did not participate, attempt to confuse the jury with the prejudicial and false suggestion that everyone on Capitol Hill on January 6, 2021, did exactly the same things, or to suggest that the intentions of other people reveal the intent or motivations of the Defendant(s) at bar.

The Government has relied upon claims that some unknown, unidentified persons shouted something in the crowd. Of course, it is possible that those hearing those shouts could have been thinking "Wow, that's stupid. I would never agree with that comment. That guy should shut up." Yet the Government wants to confuse the jury with the idea that everyone in a crowd thought exactly the same thing like a "hive mind."

## II.  CONCLUSION

The Court should enter the requested orders in limine.

August 14, 2023                               **RESPECTFULLY SUBMITED,**
                                              John M. Pierce, Esq.
                                              *Counsel for Defendant*

                                                   /s/ John Pierce

                                              JOHN PIERCE LAW
                                              21550 Oxnard Street 3rd Floor, PMB #172
                                              Woodland Hills, CA 91367
                                              jpierce@johnpiercelaw.com
                                              (213) 279-7846

## CERTIFICATE OF SERVICE

I hereby certify that on this date my law firm is filing the foregoing with the Court by its ECF record-keeping and filing system, which automatically provides a copy to:

> MATTHEW M. GRAVES
> UNITED STATES ATTORNEY
>
> CARI F. WALSH
> Assistant U.S. Attorney
>
> HOLLY F. GROSSHANS

Assistant U.S. Attorney
United States Attorney's Office
for the District of Columbia
601 D Street, NW
Washington, D.C. 20530
Phone: (202) 252-6737
Cari.Walsh@usdoj.gov
Holly.Grosshans@usdoj.gov

Francesco Valentini
United States Department of Justice, Criminal Division
Detailed to the D.C. United States Attorney's Office
601 D Street NW
Washington, D.C. 20530
(202) 598-2337
francesco.valentini@usdoj.gov

          */s/ John Pierce*
          John M. Pierce