UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 1:21-CR-191 (JEB) |
| | : | |
| RYAN ZINK, | : | |
| | : | |
| Defendant. | : | |

**UNITED STATES' OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR DISMISSAL OF ALL COUNTS AND MOTION TO CONTINUE**

The United States of America, by and through undersigned counsel, submits this omnibus response opposing Defendant Ryan Zink's Motion for Dismissal of All Counts (ECF 69) and his related Motion to Continue Trial (ECF 70). Both motions allege "criminal destruction of evidence, obstruction of justice, and spoilation (sic) of evidence" by the "U.S. House of Representatives Select Committee on the January 6, 2021 Attack on the U.S. Capitol." (ECF 69 at 1, see caption, ECF 70 at 1, referencing ECF 69). Ryan Zink (hereinafter, "Mr. Zink" or "the defendant") baselessly speculates that information was purportedly held and then destroyed or lost by the Select Committee to Investigate the January 6th Attack on the United States Capitol (hereinafter, "Select Committee"). He provides no evidence that information material to his case was ever held or lost.

In addition to the extraordinary remedy of dismissal, Mr. Zink seeks the extraordinary relief of convening of an evidentiary hearing to interrogate members of the Select Committee, a Court ordered subpoena to the Select Committee, an "interlocutory appeal and stay of these proceedings," or for this Court to "institute contempt of court proceedings for the Select Committee." ECF 69 at 3-4.[1] Mr. Zink fails to specify any authority of the Court to dismiss the Indictment in this case,

---

[1] Neither the Select Committee nor its members are parties before this Court.

much less for his request for the Court's assistance in obtaining information about documents allegedly destroyed by the Select Committee. His dismissal motion is instead filled with speculative and conspiratorial allegations of wrongdoing by the Select Committee. Moreover, the motions lack any actual evidence or reason to believe that the Select Committee ever discovered, much less destroyed, documents related to Mr. Zink, or his state of mind prior to or on January 6. Mr. Zink did not offer any substantive argument for why the Court should grant his requests for dismissal or the other extraordinary remedies. Accordingly, the United States requests that the Court deny Mr. Zink's motion to dismiss the case, and for the other extraordinary relief requested, as meritless for the reasons stated herein.

## I.     FACTUAL BACKGROUND AND PROCEDURAL POSTURE

On January 6, 2021, thousands of rioters took part in an attack on the U.S. Capitol in an effort to stop the certification of the results of the 2020 presidential election. These rioters forced their way into the U.S. Capitol building, requiring elected officials and their staff to flee or shelter in place and injuring many law enforcement officers.

As summarized in part in the Statement of Facts accompanying the defendant's criminal complaint (ECF 1), Mr. Zink was a member of the crowd that stormed the United States Capitol on January 6, 2021. Mr. Zink was indicted on March 5, 2021 for Obstructing an Official Proceeding in violation of 18 U.S.C. §1512(c)(2) (Count I); Entering and Remaining in a Restricted Building or Grounds in violation of 18 U.S.C. §§ 1752(a)(1) (Count II), and Disorderly and Disruptive Conduct in a Restricted Building or Grounds in violation of 18 U.S.C. §§

1752(a)(2) (Count III).[2]  ECF 6.

On January 6, 2021, Mr. Zink marched from the area near the Ellipse in Washington, D.C. to the United States Capitol. He stood immediately outside a barrier demarcating the restricted grounds on the east side of the Capitol just before a breach of that barrier. Mr. Zink then entered the restricted area, marched through the plaza filled with a mob of rioters, and went up the stairs of the Capitol's Central East Portico.  Before and during this criminal conduct, Mr. Zink stated his corrupt intent to block, interfere with, or slow the progress of Congress' Joint Session to certify the Electoral College Vote.

The motions at issue were filed on August 13, 2023.  ECF 69, 70. The case is currently scheduled for trial on September 5, 2023.  Minute Entry dated April 4, 2023. The United States has produced a large volume of discovery to Mr. Zink in a comprehensive, accessible, and useable format through his current and former counsel.

II.     LEGAL PRINCIPLES REGARDING DISMISSAL OF AN INDICTMENT

Dismissal of an indictment is an extraordinary remedy because of the public's interest in the administration of criminal justice.  See *United States v. Stokes,* 124 F.3d 39, 44 (1st Cir.1997); *see also United States v. Morrison,* 449 U.S. 361, 365, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981) (concluding that the dismissal of an indictment was unwarranted absent a constitutional violation that prejudiced defendant's case); *Whitehouse v. United States Dist. Court,* 53 F.3d 1349, 1359 (1st Cir.1995) ("When a federal court uses its supervisory power to dismiss an indictment it directly encroaches upon the fundamental role of the grand jury. That power is appropriately reserved,

---

[2] Count IV, Disorderly Conduct in a Capitol Building in violation of 40 U.S.C. § 5104(e)(2)(D), was dismissed.  ECF 76; Minute Order dated August 28, 2023.

therefore, for extremely limited circumstances.").

Where dismissal is sought based on claims that the prosecution lost or destroyed evidence, a defendant must make a showing that the information purportedly destroyed or lost was both material and favorable to the defense, with a reasonable likelihood that the evidence or testimony would affect the outcome of his case. *See United States v. Valenzuela-Bernal*, 458 U.S. 858, 873, (1982).

### III. LEGAL PRINCIPALS REGARDING CONTINUANCE

A party seeking to continue a trial date must show a compelling need for delay. *See, e.g., Morris v. Slappy*, 461 U.S. 1, 11 (1983). This Court has broad discretion to grant or deny a request for delay, as the Supreme Court has explained:

> The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, the myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

Ungar v. Sarafite, 376 U.S. 575, 590 (1964); *United States v. Ashton*, 555 F.3d 1015, 1020 (D.C. Cir. 2009) ("a trial judge enjoys great discretion in ruling on a motion for continuance"). In the exercise of such discretion, trial judges should consider (1) the defendant's diligence in attempting to secure the evidence before trial; (2) the length of the requested continuance and the associated burden on the government; and (3) the likelihood the evidence will be favorable and relevant to the defense. *Ashton,* 555 F.3d at 1020.

### V. THE UNITED STATES PRODUCTION OBLIGATIONS

Mr. Zink argues that the government Select Committee has destroyed or lost unspecified evidence. He equates this contention to violation of violated *Brady v. Maryland*, 373 U.S. 83 (1963), or the Jencks Act, 18 U.S.C. § 3500, in failing to produce "deleted," "misplaced, disorganized, or otherwise unavailable" records, which he only vaguely describes. ECF 69 at 9. In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. 83, at 87. The government has "an affirmative duty to disclose exculpatory evidence to the defense, even if no request has been made by the accused." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir. 2017). "Impeachment evidence, however, as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985).

*Brady*, however, does not impose an "undifferentiated and absolute duty to retain and to preserve all material that might be of conceivable evidentiary significance" in a particular prosecution. *Arizona v. Youngblood*, 488 U.S. 51, 57–58 (1988). A defendant must show bad faith on the part of police before a sanction is imposed if potentially useful evidence is lost by the very police investigating a particular defendant's case. *Id*.

The Jencks Act provides that "no statement" of a government witness "shall be the subject of discovery or inspection until said witness has testified on direct examination" at trial. See 18 U.S.C. § 3500. If the United States fails to provide such statements, the court "shall strike from the record the testimony of the witness." *Id*.

Additionally, even presuming as true that documents were held and lost by the Select Committee, those documents would fall outside the parameters of the production requirements of Federal Rule of Criminal Procedure 16 because they are not within the possession, custody or control of the prosecution. Rule 16 mandates the disclosure of any evidence in the government's possession that is material to the preparation of a defense. *See United States v. Flynn*, 411 F. Supp. 3d 15, 28-29 (D.D.C. 2019). "Under Rule 16, the government must produce documents and objects, including "photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items." Fed. R. Crim. P. 16(a)(1)(E). Rule 16, however, also requires that documents and objects enumerated must be "within the government's possession, custody, or control." *Id.* To be within the government's "possession, custody, or control," the materials must be within the prosecutor's direct control or "maintained by other components of the government which are 'closely aligned with the prosecution…'" *United States v. Libby*, 429 F. Supp. 2d 1, 7 (D.D.C. 2006) (quoting *United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)). This limitation ensures that courts do not adopt a "monolithic view of government" that would "condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (applying a narrow view of government control of materials in the *Brady* context) (internal quotation and citation omitted). Tangential investigation of a matter by another arm of the federal government does not automatically place records from that investigation into the control of the prosecution team. *See, e.g.*, *United States v. Chalmers*, 410 F. Supp. 2d 278, 289–90 (S.D.N.Y. 2006) (declining to incorporate several agencies outside of the Department of Justice into the prosecution team for Rule 16 purposes).

Rule 16 also requires that documents enumerated in the rule must be: (1) material to preparing the defense, (2) intended to be used in the government's case-in-chief at trial, or (3) obtained from or belonging to the defendant. Fed. R. Crim. P. 16(a)(1)(E). To prove materiality under the first prong, a defendant must make a preliminary showing that the information sought is in fact material by demonstrating that the document or object would "enable[] the defendant significantly to alter the quantum of proof in his favor." *United States v. Graham*, 83 F.3d 1466, 1474 (D.C. Cir. 1996). The defense must also show that the discovery sought would refute the government's case in chief. *United States v. Armstrong*, 517 U.S. 456, 463 (1996); *United States v. Rashed*, 234 F.3d 1280, 1285 (D.C. Cir. 2000). The document or object must bear more than "some abstract relationship to the issues in the case." *Libby*, 429 F. Supp. 2d 1, at 7.

Courts impose such limits on defendants because the rule does not require a "broad or blind fishing expedition among documents possessed by the Government on the chance that something impeaching might turn up." *Jencks v. United States*, 353 U.S. 657, 667 (1957) (quoting *Gordon v. United States*, 344 U.S. 414, 419 (1953)). Moreover, Rule 16 does not convey an entitlement to discovery that is duplicative of documents and objects already provided. *See e.g.*, *United States v. Sutton*, No. CR 21-0598-1 (PLF), 2022 WL 3134449, at *6 (D.D.C. Aug. 5, 2022); *United States v. Abu-Jihaad*, No. 3:07CR57 (MRK), 2008 WL 346121, at *5 (D. Conn. Feb. 4, 2008).

### III.    Argument

In his motion, the defendant cites a Fox news article reporting a dispute between the former Select Committee Chairman and the current Chairman of the Subcommittee on Oversight for the Committee on House Administration over whether the Select Committee properly preserved material obtained during its investigation. ECF 69 at 2. From these disputed claims, Zink concludes

without further support that the Select Committee's evidence was destroyed or lost, and argues that the alleged absence of materials obtained and possessed by Congress require dismissal of his indictment.

He has not shown that any evidence significant to the outcome or even relating to his case was ever held, much less lost by Congress. More to the point, he has not alleged that material evidence relating to his case was lost by the United States or the FBI, much less that it was lost in bad faith. Thus, he has not met any requirement justifying the extraordinary sanction of dismissal.

In his motion, Zink does not claim that any materials the Executive Branch may have obtained from the Select Committee are the basis of a discovery or *Brady* violation, or that such materials have been lost or destroyed. His claim is limited to records that Congress possessed that are now supposedly unavailable to another Member of Congress. *"*But the Government need not—indeed, it cannot—produce information or materials 'in the possession of Congress' but not in the possession of the Department of Justice or another executive agency." *United States v. Nordean*, 2022 WL 2292062, at *2 n. 4 (D.D.C. June 24, 2022), citing *United States v. Trie*, 21 F. Supp. 2d 7, 25 n.17 (D.D.C. 1998) ("The Congress is not an 'agency,' and the DOJ has no obligation under *Brady* to disclose information in the possession of Congress that is not also in the possession of the DOJ or the FEC."); *cf. United States v. Safavian*, 233 F.R.D. 12, 14 (D.D.C. 2005) ("Congress is a separate branch of the government and was not intended by the Rules writers to be included within [Federal Rule of Criminal Procedure] 16."). The documents Zink complains of are not in the prosecutions control for purposes of *Brady*, Rule 16, 18 U.S.C. § 3500, or other disclosure requirements.

To the extent the documents Mr. Zink seeks are not "within the government's possession, custody, or control," the United States has no obligation to disclose them to the defendant pursuant to Rule 16. The government cannot produce materials maintained by other components of the government which are not "'closely aligned with the prosecution….'" *Libby*, 429 F. Supp. 2d 1, at 6 (quoting *Brooks*, 966 F.2d 1500, at 1503). "Nonetheless is it settled that the government generally need not produce documents that are in the possession, custody, or control of a separate branch of government such as Congress…." *Id.* at 7 (quoting *United States v. Safavian*, 233 F.R.D. 12, at 14). Rule 16 does not include "a committee of the United States Senate (or the House of Representatives) because the Congress is a separate branch of the government and was not intended by the Rules writers to be included within Rule 16." *Id*; *Cf. United States v. Trie,* 21 F.Supp.2d 7, 25 n. 17 (D.D.C.) ("The Congress is not an 'agency,' and the DOJ has no obligation under *Brady* to disclose information in the possession of Congress that is not also in the possession of the DOJ or [another Executive Branch agency].")

Investigation of a matter by another arm of the federal government does not automatically place records from that investigation into the control of the prosecution team. *See, e.g.*, *Chalmers*, 410 F. Supp. 2d 278, at 289–90 (declining to incorporate several agencies outside of the Department of Justice into the prosecution team for Rule 16 purposes); *United States v. Mejia*, 488 F.3d 436, 444-45 (D.C. Cir. 2006) (rejecting defense argument that government's discovery obligations extended to securing potentially relevant material held by a foreign government which were not within the governments possession, custody, or control)); *United States v. Marshall*, 132 F.3d 63, 68 (D.C. Cir. 1998) (observing that "the government cannot be required to disclose evidence that it neither possesses nor controls"). To the extent investigative materials used and

9

created by Congress in connection with the events of January 6 are not in the possession of the United States Attorney's Office, they are thus not subject to disclosure.

Moreover, these materials are irrelevant to the case against Mr. Zink. Congress, a separate branch of government from the U.S. Attorney's Office, investigated the totality of the events of that day. House Resolution 503 described the purpose of the Select Committee as, "[t]o investigate and report upon the facts, circumstances, and causes relating to the January 6, 2021, domestic terrorist attack upon the United States Capitol Complex…" House Resolution 503, available at https://www.congress.gov/bill/117th-congress/house-resolution/503/text) (last visited August 27, 2023).  Additionally, the Select Committee was charged with examining "influencing factors that fomented such an attack on American representative democracy while engaged in a constitutional process."  It did not investigate the role of Mr. Zink.  Select Committee documents would bear no more than "some abstract relationship to the issues in the case." *Libby*, 429 F. Supp. 2d 1, at 7. The documents are thus not material because they would not refute some aspect of the government's case in chief. *Armstrong*, 517 U.S. 456, at 463; *Rashed*, 234 F.3d 1280, at 1285.

Zink has not shown a *Brady* or discovery violation.  He has not shown a constitutional violation.  He has not shown that any of the Select Committee's records that are now supposedly missing are relevant to his case or that such records would affect the outcome of his case.  Therefore, he has not met the requirements of *Morrison* or *Valenzuela-Bernal.*  Accordingly, he is not entitled to any of the relief he seeks.

### IV. Conclusion

For the foregoing reasons, the United States submits that the relief requested by Defendant

Ryan Zink for continuance or for dismissal or for other extraordinary relief be denied because the requests lack a legal and factual basis.

                                        Respectfully submitted,

                                        MATTHEW M. GRAVES
                                        United States Attorney
                                        D.C. Bar No. 481052

By:       */s/ Cari F. Walsh*
                CARI F. WALSH
                Assistant U.S. Attorney
                M.O. Bar No. 37867

                HOLLY F. GROSSHANS
                Assistant U.S. Attorney
                D.C. Bar No. 90000361

                United States Attorney's Office
                for the District of Columbia
                601 D Street, NW
                Washington, D.C. 20530
                Phone: (202) 252-6737
                Cari.Walsh@usdoj.gov
                Holly.Grosshans@usdoj.gov