UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 1: 21-cr-00191-JEB-1 |
| RYAN ZINK ) | |
| ) | |
| Defendant ) | |
| ) | |

**DEFENDANT ZINK'S MOTION IN LIMINE TO PRECLUDE UNCORROBORATED SELF-EVIDENTLY FALSE "CONFESSION" STATEMENTS BY ZINK, PURSUANT TO <u>CORPUS DELICTI</u> PRINCIPLES**

COMES NOW defendant Ryan Zink ("Zink"), by and through counsel, who moves for a pretrial order precluding the United States from introducing discussion, evidence, or argument regarding Zink's self-evidently false and uncorroborated remarks on January 6, as the admission of such remarks would violate the ancient rule of *corpus delicti*.

**This case presents a classic corpus delicti problem.**

This is a classic *corpus delicti* case: Zink merely stood and walked in various locations <u>outside</u> the Capitol on January 6. At most, this evidence might implicate Zink for "entering or remaining in a restricted area" (if the jury credits the government's assertions that the steps, grounds, and terraces of the Capitol were truly posted and restricted). It is only through admission of Zink's obviously false and exaggerated Facebook Livestream remarks that Zink could be suggestively implicated in any serious offense.

While Zink walked and stood around the Capitol, accompanied by his father Jeff Zink (a candidate for Congress at the time; for whom Ryan Zink was a promotional campaign staffer), Ryan Zink recorded numerous dramatic exaggerations and misstatements of the scene. Zink

1

recorded that "We've broken down the gates! They can't stop us!" "We're storming the Capitol!" and other similar claims.

These statements are self-evidently false and uncorroborated, in the classic sense of *corpus delicti* statements. Zink <u>did not</u> "broken down" any gates (he hadn't even touched a fence or gate). Zink did not "storm" the Capitol, unless he meant walking with an exuberant crowd toward the outside of the building. Zink did not, and could not, halt or hinder any proceedings of Congress within the Capitol. In fact, no one inside could have even heard anything said by Zink at any time.

It is obvious from any analysis that Zink's livestreamed references to "we" could not have included himself (other than as a mere onlooker, or cheerleader). Zink has been a sports color-commentator with a Facebook following that expects Zink to be over-the-top and dramatic in his descriptions of his school sports teams' battles with other teams.

Thus, the Court <u>should separate Zink's actual conduct</u> on January 6 (standing and/or walking outside the building) from Zink's over-the-top, obviously false, dramatics on Zink's Facebook Livestream on January 6.

**1. Zink's case violates the ancient principle of corpus delicti.**

Corpus delicti (Latin for "body of the crime"; plural: corpora delicti) is an ancient rule of evidence in Western law. It is the principle that a crime must be proved to have occurred before a person can be convicted of committing that crime. And a person's uncorroborated statements that he committed such a crime cannot be admitted into evidence.

For example, a person cannot be tried for larceny unless it can be proven that property has been stolen. Likewise, in order for a person to be tried for arson it must be proven that a

criminal act resulted in the burning of a property. Black's Law Dictionary (6th ed.) defines "corpus delicti" as: "the fact of a crime having been actually committed."

Corpus delicti is also a rule of evidence which holds that a defendant's out-of-court confession, alone, is insufficient evidence to prove the defendant's guilt beyond reasonable doubt. *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 497 n.14 (1963) (citing to corpus delicti rule and stating: "For the history and development of the corroboration requirement, see 7 Wigmore, Evidence [3d ed. 1940], §§ 2070–2071; Note, Proof of the Corpus Delicti Aliunde the Defendant's Confession, 103 U. of Pa. L. Rev. 638–649 [1955]. For the present scope and application of the rule, see 2 Underhill, Criminal Evidence [5th ed. 1956], §§ 402–403. For a comprehensive collection of cases, see Annot., 45 A. L. R.2d 1316 [1956].")

A corollary to this rule is that an accused cannot be convicted solely upon the testimony of an accomplice. Some jurisdictions also hold that without first showing independent corroboration that a crime happened, the prosecution may not introduce evidence of the defendant's statement.

In Zink's case, however, the evidence for "obstruction of an official proceeding" will consist of nothing but the defendant walking onto certain steps outside the east side of the Capitol while uttering various exclamations (many of which were obviously factually false) into his cell phone device livestream. The defendant did nothing untoward, exceptional or worthy of note, and never entered (or even came close to entering) the Capitol building.

Zink merely livestreamed various remarks to Facebook, saying into his device:

> **"We knocked down the gates. We're storming the capitol. You can't stop us. We broke through. They're not holding us out."**
> **"USA USA USA. You can't stop us. You can't stop us. This is our land."**
> **"We want Trump. We want Trump. We want Trump…"**

3

> "We stormed the capitol. There's thousands of us here, they can't stop us all. And everybody else is coming too."
>
> "We are at the steps of the Capitol. Call your congressman. Call anyone that you can. Get to your Capitols. Get to your Capitols. It's time. This is bullshit."
>
> "This is our country. This is it. The steps of the Capitol. Stop the steal. Stop the steal…."
>
> "This has never happened in history before. Never have you gotten to the footsteps of the Capitol."
>
> "They cannot stop us. This is our country. This is our building. This is ours."
>
> "You all wanted to know how it's going. We are about to bum rush this shit."

Video 2

> "They are not gonna get this one. (the video shows a large group of people chanting at the doors of the capitol)

Video 3

> "You wanted to see what it's become. We're in the doors. They shot flash bangs at us. Alright, do they hear us? Do they hear us now?"

Facebook message at 3:27 pm

> "Broke down the doors. Pushed Congress out of session. I took two flashbangs. I'm OK. I'll be posting pictures in a little bit, when we get back. I'm hurt but we accomplished the job."

Although a handful of Zink's remarks near the Capitol on January 6 were in the nature of group protest chants aimed at fellow protestors (e.g., "USA USA USA," "We want Trump. We want Trump. We want Trump"), the vast majority of Zink's remarks were said specifically into Zink's cell phone, for the benefit of Zink's Facebook live audience. And Zink is a well-known local entertainer, political and sports commentator and country music lead vocalist. Zink had cultivated a Facebook audience of thousands who knew and expected him to over-hype and dramatize events on livestreams.

The common law corpus delicti rule prohibits the admission of an extrajudicial confession into evidence in a criminal case unless the prosecution introduces some

evidence independent of the confession that the crime described in the confession actually occurred. There is <u>no</u> evidence that Zink broke down any gates, stormed any capitol (unless walking peacefully with a crowd is storming), took any flashbangs to the chest, or broke down any doors.

The venerable corpus delicti rule, designed to prevent the conviction of the coerced and the mentally unstable for "fictitious crimes." David A. Moran, In Defense of the Corpus Delicti Rule, 64 Ohio St. L. J. 817 (2003). There could be no clearer example of a case which violates the corpus delicti principle than this case. Mr. Zink's bare alleged conduct (merely standing, or walking in public spaces) simply does not constitute a felony crime.  Zink never touched, broke, mishandled, pushed, shoved, or pulled at anything on January 6.  And Zink's inculpatory statements were NOT directed at anyone around him; but at a Facebook audience far away. By every definition, Zink's alleged remarks to Facebook Live were an "[e]xtrajudicial confession [without] "some evidence independent of the confession that the crime described in the confession actually occurred."

In point of fact,

1. Zink never "knocked down the gates" despite saying so on livestreamed video.
2. Zink never "storm[ed] the capitol" despite saying so on livestreamed video.
3. Zink never "broke through" despite saying so on livestreamed video.
4. Zink never "bum rush[ed]" the Capitol. despite saying so on livestreamed video.
5. Zink was never "in the doors" despite saying so on livestreamed video.
6. Zink never had "flash bangs" shot at him, despite saying so on livestreamed video.
7. Zink never "broke" any doors, despite saying so on livestreamed video.

8. Zink never took flashbangs "to the chest," despite saying so on livestreamed video.

9. Zink never went "in the doors" despite saying so on livestreamed video.

The rule excludes "confessions when the government cannot independently prove the existence of the alleged crime." Moran, *supra*, at 819. The rule remains an important protection from wrongful convictions. *See, e.g., People v. McAllister*,[1] in which a mentally disturbed woman was condemned to spend the rest of her life in prison for "committing" an apparently fictitious murder. *Opper v. United States*, 348 U.S. 84 (1954), "[English] courts have been hesitant to lay down a rule that an uncorroborated extrajudicial confession may not send an accused to prison or to death." *Id*. at 89 (footnote omitted).

In order to convict Zink of obstructing an official proceeding, the government must first, "introduce sufficient evidence to establish that the criminal conduct at the core of the offense has occurred"; and second, "it must introduce independent evidence tending to establish the trustworthiness of the admissions, unless the confession is, by virtue of special circumstances, inherently reliable." *United States v. Lopez-Alvarez*, 970 F.2d 583, 592 (9th Cir. 1992).

Moreover, the corpus delicti principles in this case are intertwined with First Amendment principles. Zink was a staff videographer and hype promoter for a congressional candidate on January 6, whose conduct must be afforded all the protection that such status brings to him.

---

[1] No. 155392, slip op. (Mich. Ct. App. July 27, 1994) (cited in Moran, supra, at 819 n.14.

ACCORDINGLY, Zink prays for an order in limine precluding the statements described above from being introduced or used against him at trial.

Dated: September 3, 2023                                                                 Respectfully Submitted,

*/s/ John M. Pierce*
John M. Pierce
21550 Oxnard Street
3rd Floor, PMB #172
Woodland Hills, CA 91367
Tel: (213) 400-0725
Email: jpierce@johnpiercelaw.com

**CERTIFICATE OF SERVICE**

      I, John M. Pierce, hereby certify that on this day, September 3, 2023, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

                                   /s/ John M. Pierce
                                   John M. Pierce