## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Leave to file GRANTED

/s/ _____   9/6/23
James E. Boasberg   Date
Chief Judge

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | ) |
|  | ) Criminal No. 1:21-cr-191 (JEB) |
| RYAN ZINK, | ) |
|  | ) |
| *Defendant.* | ) |
|  | ) |

### MOTION TO QUASH

Pursuant to Rules 17 and 47 of the Federal Rules of Criminal Procedure and Local

Criminal Rule 47, the Honorable Kevin McCarthy, the Honorable Jim Jordan, and the Honorable

Marjorie Taylor Greene respectfully move to quash the subpoenas issued to them by Defendant

Ryan Zink.  *See* Ex. A.  For the reasons set forth in the accompanying Memorandum of Points

and Authorities, the subpoenas should be quashed.  A proposed order is attached.

September 5, 2023

Respectfully submitted,

*/s/ Matthew B. Berry*
MATTHEW B. BERRY
  *General Counsel*
TODD B. TATELMAN
  *Deputy General Counsel*
BRADLEY CRAIGMYLE
  *Associate General Counsel*
RACHEL A. JANKOWSKI
  *Assistant General Counsel*

Office of General Counsel
U.S. House of Representatives
5140 O'Neill House Office Building
Washington, D.C. 20515
(202) 225-9700
Matthew.Berry@mail.house.gov

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:21-cr-191 (JEB) |
| | ) | |
| RYAN ZINK, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF THE MOTION TO QUASH

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 5

I.      The Members Do Not Possess the Materials Requested by Mr. Zink and Do Not Have the Firsthand Knowledge Necessary to Provide Any Testimony............................. 5

II.     The Speech or Debate Clause Requires That the Subpoenas Be Quashed ........................ 7

III.    The Subpoenas Are Unreasonable and Oppressive ......................................................... 10

IV.   Mr. Zink Cannot Show Extraordinary Circumstances Warranting the Members' Testimony ........................................................................................................................ 13

CONCLUSION ................................................................................................................... 17

# TABLE OF AUTHORITIES[*]

**Cases**                                                                                                   **Page(s)**

*Barker v. Conroy*,
   921 F.3d 1118 (D.C. Cir. 2019) ....................................................................................9

*Brown & Williamson Tobacco Corp. v. Williams*,
   62 F.3d 408 (D.C. Cir. 1995) ......................................................................................8

*Cheney v. U.S. Dist. Ct. for D.C.*,
   542 U.S. 367 (2004) .................................................................................................11

*Dennis v. Sparks*,
   449 U.S. 24 (1980) ......................................................................................................7

*Doe v. McMillan*,
   412 U.S. 306 (1973) ....................................................................................................8

*\*Eastland v. U.S. Servicemen's Fund*,
   421 U.S. 491 (1975) .................................................................................................7, 8

*\*Gravel v. United States*,
   408 U.S. 606 (1972) .................................................................................................8, 9

*Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*,
   720 F.3d 939 (D.C. Cir. 2013) ....................................................................................8

*In re Cheney*,
   544 F.3d 311 (D.C. Cir. 2008) ..................................................................................15

*In re Grand Jury Subpoenas*,
   571 F.3d 1200 (D.C. Cir. 2009) ..................................................................................7

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ..................................................................................12

*In re United States (Bernanke)*,
   542 F. App'x 944 (Fed. Cir. 2013) ............................................................................15

*In re United States (Kessler)*,
   985 F.2d 510 (11th Cir. 1993) ..................................................................................14

---

[*] Pursuant to Local Criminal Rule 47(a), authorities upon which we chiefly rely are marked with asterisks.

*In re United States (Reno & Holder)*,
  197 F.3d 310 (8th Cir. 1999) ........................................................................14, 15

*Marisol A. v. Giuliani*,
  No. 95-cv-10533, 1998 WL 132810 (S.D.N.Y. Mar. 23, 1998)...............................15

*McCarthy v. Pelosi*,
  5 F.4th 34 (D.C. Cir. 2021)................................................................................10

*McNamee v. Massachusetts*,
  No. 12-40050-FDS, 2012 WL 1665873 (D. Mass. May 10, 2012) ........................14

*Miller v. Transamerican Press, Inc.*,
  709 F.2d 524 (9th Cir. 1983) ................................................................................7

*MINPECO, S.A. v. Conticommodity Servs., Inc.*,
  844 F.2d 856 (D.C. Cir. 1988).................................................................................7

*Moriah v. Bank of China, Ltd.*,
  72 F. Supp. 3d 437 (S.D.N.Y. 2014).................................................................14, 17

*Simplex Time Recorder Co. v. Sec'y of Labor*,
  766 F.2d 575 (D.C. Cir. 1985) ........................................................................14, 15

*Springfield Terminal Ry. Co. v. United Transp. Union*,
  No. 89-0073, 1989 WL 225031 (D.D.C. May 18, 1989)........................................14

*United States v. Bebris*,
  4 F.4th 551 (7th Cir. 2021), *cert. denied*, 142 S. Ct. 489 (2021)............................10

*United States v. Dean*,
  55 F.3d 640 (D.C. Cir. 1995) ..................................................................................7

*United States v. Dowdy*,
  479 F.2d 213 (4th Cir. 1973) ................................................................................10

*United States v. Fitzsimons*,
  342 F.R.D. 18 (D.D.C. 2022)..................................................................................12

*United States v. Haldeman*,
  559 F.2d 31 (D.C. Cir. 1976)............................................................................12, 13

*United States v. Helstoski*,
  442 U.S. 477 (1979)........................................................................................7, 8, 9

*United States v. Johnson*,
383 U.S. 169 (1966) ..................................................................................7

*United States v. Libby*,
432 F. Supp. 2d 26 (D.D.C. 2006) ............................................10, 11, 13

*United States v. Morgan*,
313 U.S. 409 (1941) ................................................................................14

*United States v. Newman*,
531 F. Supp. 3d 181 (D.D.C. 2021) ........................................................15

*\*United States v. Nixon*,
418 U.S. 683 (1974) ..........................................................................10, 12

*United States v. North*,
713 F. Supp. 1448 (D.D.C. 1989) ...........................................................13

*United States v. Noriega*,
764 F. Supp. 1480 (S.D. Fla. 1991) ........................................................13

*United States v. Rayburn House Office Bldg., Room 2113*,
497 F.3d 654 (D.C. Cir. 2007) ..................................................................9

*United States v. Rostenkowski*,
59 F.3d 1291 (D.C. Cir. 1995) ................................................................15

**Constitution**

U.S. Const. art. I, § 6, cl. 1 ...................................................................7, 8

U.S. Const. amend XII. ...............................................................................2

**Statutes and Rules**

2 U.S.C. § 1901a(a)(2) ....................................................................................5

18 U.S.C. § 1512(c)(2) ...................................................................................11

Fed. R. Crim. P. 17(c)(2) ...............................................................................11

**Legislative Authorities**

Rule I.1-I.5, Rules of the U.S. House of Representatives,
118th Cong. (2023) .................................................................................16

Rule I.8(a), Rules of the U.S. House of Representatives,
117th Cong. (2023) ............................................................................................3

Rule I.12, Rules of the U.S. House of Representatives,
117th Cong. (2021) ............................................................................................6

Rule I.12(b)(1), Rules of the House of Representatives,
117th Cong. (2021) .........................................................................................2, 3

Rule III.1, Rules of the U.S. House of Representatives,
118th Cong. (2023). .....................................................................................15, 16

Rule VIII.1(b), Rules of the U.S. House of Representatives,
118th Cong. (2023) ..........................................................................................11

Rule VIII.3(a), Rules of the U.S. House of Representatives,
118th Cong. (2023) ..........................................................................................11

Rules of Procedure, Committee on the Judiciary,
118th Cong. (2023). ..........................................................................................16

167 Cong. Rec. H77 (daily ed. Jan. 6, 2021) ...........................................................2

167 Cong. Rec. H85 (daily ed. Jan. 6, 2021) ........................................................2, 3

167 Cong. Rec. H93 (daily ed. Jan. 6, 2021) ...........................................................3

167 Cong. Rec. H94 (daily ed. Jan. 6, 2021) ...........................................................3

167 Cong. Rec. H98 (daily ed. Jan. 6, 2021) ...........................................................3

H. Res. 5, 118th Cong. § 3(y) (2023)........................................................................5

House Calendar, 118th Cong., 1st Sess. ...................................................................16

Subcomm. on Oversight, Comm. on H. Admin., 118th Cong.,
*Committee on House Administration Access to USCP Video* (2023) .......................................5

## INTRODUCTION

The Honorable Kevin McCarthy, U.S. Representative for California's 20th Congressional District and Speaker of the U.S. House of Representatives; the Honorable Jim Jordan, U.S. Representative for Ohio's 4th Congressional District and Chairman of the House Committee on the Judiciary; and the Honorable Marjorie Taylor Greene, U.S. Representative for Georgia's 14th Congressional District (collectively, Members), respectfully move to quash the non-party subpoenas dated July 17, 2023 (Subpoenas, attached as Exhibit A) issued to them by Defendant Ryan Zink.  Mr. Zink has been charged with criminal offenses in connection with his alleged conduct on January 6, 2021, and has subpoenaed these three sitting Members of the House of Representatives to testify at his trial.  The Subpoenas also seek to compel the production of videos from January 6 and communications from January 5 to January 19 generally related to the recessing and resumption of House proceedings on January 6.

The Court should quash the Subpoenas for several reasons.  *First*, the Members do not possess the materials or information that Mr. Zink requests.  These Members belonged to the minority party on January 6 and were not involved in the process of deciding to recess the House on that date.  Accordingly, the Members do not possess the communications being sought and lack the necessary personal knowledge to testify about those matters.  *Second*, the Speech or Debate Clause of the U.S. Constitution protects the Members from being compelled to testify about the House proceedings on January 6 or produce the requested communications.  Courts have long protected Members from being forced to testify or produce documents about legislative acts, and calling a recess or calling the House back into session are core legislative acts.  On January 6 specifically, those acts determined exactly when Congress discharged its constitutional duty to count the votes of the Electoral College for President and Vice President of the United States.  *Third*, the Subpoenas fail to satisfy the basic requirements of Rule 17 because

they do not seek relevant material.  Nor do they identify the requested material with the necessary specificity; they instead use language like "any and all communications" over a fourteen-day period that more resembles a fishing expedition than a Rule 17 subpoena.  Neither has Mr. Zink reasonably specified the material in the requested documents that would materially aid his defense.  *Finally*, the apex doctrine bars compelling any testimony by Members of Congress about their official activities absent a showing of "extraordinary circumstances" not present here.  For all these reasons, the Court should quash the Subpoenas.

## BACKGROUND

Speaker McCarthy, Chairman Jordan, and Representative Taylor Greene were all Representatives belonging to the then-minority party of the House on January 6, 2021, when, pursuant to the Twelfth Amendment, Congress met in a Joint Session to undertake its constitutional duty to count the votes of the Electoral College for President and Vice President of the United States.  *See* U.S. Const. amend XII.  On January 6, 2021, the Members were present both at the Joint Session of the House and Senate, held pursuant to the provisions of Senate Concurrent Resolution 1, and at the House sessions held on the same day to consider objections to the electoral votes in certain states.

On January 6, Congress took many official actions that dictated when it performed its constitutional duty to count the votes of the Electoral College, as the Twelfth Amendment requires.  For example, the Joint Session was called to order at 1:05 pm and then dissolved at 1:14 pm to consider the objection to the electoral votes for Arizona.  *See* 167 Cong. Rec. H77 (daily ed. Jan. 6, 2021).[1]  The House proceeded with its official business and recessed at 2:18 pm, pursuant to House Rule I.12(b), before reconvening at 2:26 pm.  *Id.* at H85; *see also* Rule

---

[1] *Available at* https://perma.cc/H5LR-42W4.

I.12(b)(1), Rules of the U.S. House of Representatives, 117th Cong. (2021) (House Rules (117th Cong.)) ("To suspend the business of the House when notified of an imminent threat to its safety, the Speaker may declare an emergency recess subject to the call of the Chair.").[2]  House Rules specifically permit the Speaker to appoint another Member as "Speaker pro tempore," thereby allowing that Member "to perform the duties of the Chair."  House Rule I.8(a) (117th Cong.). That day, Representative James McGovern, who had been appointed as Speaker pro tempore, called another recess at 2:29 pm, again pursuant to House Rule I.12(b), and the House did not reconvene until 9:02 pm to continue debating and voting on the objection to the Arizona electoral votes.  167 Cong. Rec. H85.  After the debate concluded and the vote was taken, at 11:08 pm, the House informed the Senate it was ready to proceed in Joint Session.  *Id.* at H93. The next Joint Session was called to order at 11:41 pm and then dissolved at 12:22 am on January 7 to consider the objections to Pennsylvania's electoral votes.  *Id.* at H94, H98.  All of these actions were directly related to Congress's constitutional duty: calling the Joint Session or the House to order and dissolving or recessing those sessions were official acts that determined precisely when Congress discharged its obligation under the Twelfth Amendment.

Turning to the Subpoenas at issue here, while they are dated July 17, 2023, it is at best unclear whether they have been properly served on Speaker McCarthy, Chairman Jordan, and Representative Taylor Greene.[3]  The Subpoenas compel the Members to testify at Mr. Zink's

---

[2] *Available at* https://perma.cc/2DFY-ERXC.

[3] On July 28, 2023, the Office of General Counsel of the U.S. House of Representatives received an e-mail from a litigation support assistant at the law firm of Mr. Zink's counsel. Attached to that e-mail was Defendant Ryan Zink's Request for Formal Issuance of Witness Subpoenas and Copies Certified by the Clerk.  In that e-mail, the litigation support assistant asked if the Office of General Counsel would be willing to accept service on behalf of the Members and do so by e-mail or postal mail.  On that same date, the General Counsel of the U.S.

trial.  The Subpoenas also direct the Members to bring documents and other materials with them

to the trial.  For example, Speaker McCarthy and Chairman Jordan are to bring "[a]ny and all

videos relating to events of Jan. 6, 2021, compiled by the U.S. Capitol Police or House Select

Committee re: January 6."  *See* Ex. A.  Additionally, the Subpoenas require all three Members to

bring:

> Any and all communications from the USCP, Sargeants [sic] at Arms, Speaker,
> FBI, and/or Secret Service created 1/5 to 1/19/2021, relating to or concerning (1)
> plans to resume the Joint Session of Congress on 1/6/202 [sic] after disrupted, (2)
> why, when, and by whom a recess of the Joint Session of Congress was decided or
> recommended in the early afternoon of 1/6/2021, (3) any effect from the discovery
> of pipe bombs near Capitol Hill on 1/6/2021 upon the Joint Session, [and] (4) when
> the decision to recess Congress started, that is when the cause for the recess first
> existed.

*Id.*[4]  Finally, the Subpoena to Representative Taylor Greene directs her to bring any

communications from these entities related to "how demonstrators arriving AFTER the recess

caused a recess."  *Id.*  While the Subpoenas do not specify what topics Mr. Zink would like the

---

House of Representatives, replied to the litigation support assistant, stating that he was
authorized to accept service on behalf of Speaker McCarthy, Chairman Jordan, and
Representative Taylor Greene and that electronic service would be acceptable.  The litigation
support assistant did not respond to that e-mail.  Therefore, on August 23, 2023, the General
Counsel followed up with the litigation support assistant, notifying him that he had yet to receive
formal service of the Subpoenas and did not have any reason to believe that service instead had
been effectuated on the Members themselves.  The next day, the litigation support assistant
responded that he believed that the General Counsel had accepted service through his response
on July 28, 2023, but that if the Office of General Counsel was expecting to have additional steps
for that service, he could certainly accommodate that.  The General Counsel replied by stating
his view that sending a request filed with the Court for the formal issuance of subpoenas to
which copies of the Subpoenas are attached does not constitute valid service and requesting that
service be effectuated by e-mailing him the Subpoenas.  To date, the litigation support assistant
has not responded to that e-mail or taken any action to serve the Members.  It is therefore the
Members' position that these Subpoenas have not been served by Mr. Zink.

    [4] The Subpoena to Representative Taylor Greene asks for "all communications to or
from" these same entities and officials, except that it lists "Congressional leadership" instead of
"Speaker."  We interpret "Congressional leadership" to mean the leadership that was in charge of
the House on January 6, 2021, not the leadership of the minority party.

Members to testify about, we assume that they relate to matters similar to those covered by the document requests.

## ARGUMENT

I.  **The Members Do Not Possess the Materials Requested by Mr. Zink and Do Not Have the Firsthand Knowledge Necessary to Provide Any Testimony**

Mr. Zink's first request to Speaker McCarthy and Chairman Jordan—which asks for copies of videos compiled by the Capitol Police and a House select committee—has an obvious and fatal flaw: the subpoenaed Members do not possess them. According to the Subpoenas themselves, the videos Mr. Zink seeks were "compiled by the U.S. Capitol Police or House Select Committee re: January 6." With respect to any responsive videos compiled by the House Select Committee to Investigate the January 6th Attack on the United States Capitol (Select Committee), at the beginning of the 118th Congress, the full House adopted House Resolution 5, which specifically directed the transfer of the Select Committee's records to the Committee on House Administration (CHA).[5] Thus, any responsive videos compiled by the Select Committee are under the possession of CHA—not Speaker McCarthy, Chairman Jordan, or Representative Taylor Greene—and Mr. Zink must work with CHA to attempt to obtain those materials.[6] Regarding any responsive videos under the possession of the Capitol Police, the Capitol Police is a separate legal entity not under the Members' control. *See* 2 U.S.C. § 1901a(a)(2) (establishing a Capitol Police Board consisting of three voting members, the House Sergeant at Arms, Senate Sergeant at Arms, and Architect of the Capitol). In sum, these Members do not have possession,

---

[5] *See* H. Res. 5, 118th Cong. § 3(y) (2023), *available at* https://perma.cc/T32R-W2CP.

[6] *See e.g.*, Subcomm. on Oversight, Comm. on H. Admin., 118th Cong., *Committee on House Administration Access to USCP Video* (2023), *available at* https://perma.cc/8DH9-VPF6.

custody, or control over any videos compiled by either the Select Committee or the Capitol Police.

The same goes for the communications that Mr. Zink seeks. The Members do not have any communications from, between, or among the Capitol Police, Sergeants at Arms, Speaker or Congressional leadership, FBI, or Secret Service from the specified timeframe related to the plans to resume the House session, why the recess was called, or the effects of the pipe bomb discovery near Capitol Hill upon Congressional proceedings. If Mr. Zink believes that these agencies or officials have relevant information, he is free to seek it from those sources. But any requests for those agencies' or officials' communications should not be directed to these Members.

Finally, although the Subpoenas do not specify what testimony Mr. Zink seeks from the Members, it seems that he may want to ask them about the decision to recess proceedings. *See* ECF No. 65 at 2. But these Members were not personally involved in any decision to recess House proceedings. Indeed, as Representatives belonging to the then-minority party, they did not have authority under the House Rules to call a recess. *See* House Rule I.12 (117th Cong.) (delegating power to call recess to the Speaker "subject to the call of the Chair"). Thus, the subpoenaed Members have no firsthand knowledge of the information that Mr. Zink appears to seek, and, as with Mr. Zink's document requests, others would be better situated to answer Mr. Zink's questions.[7]

---

[7] However, these questions would not be relevant to this case, as we explain below.

## II.     The Speech or Debate Clause Requires That the Subpoenas Be Quashed

The Speech or Debate Clause states, "[t]he Senators and Representatives ... for any

Speech or Debate in either House ... shall not be questioned in any other Place."  U.S. Const. art.

I, § 6, cl. 1.  That provision requires quashing the Subpoenas issued here.

The Supreme Court has held that "[t]he purpose of the [Speech or Debate] Clause is to

insure that the legislative function the Constitution allocates to Congress may be performed

*independently*. …  [T]he 'central role' of the Clause is to 'prevent intimidation of legislators by

the Executive and accountability before a possibly hostile judiciary.'"  *Eastland v. U.S.*

*Servicemen's Fund*, 421 U.S. 491, 502 (1975) (emphasis added) (quoting *Gravel v. United*

*States*, 408 U.S. 606, 617 (1972)); *see also United States v. Helstoski*, 442 U.S. 477, 491 (1979)

("This Court has reiterated the central importance of the Clause for preventing intrusion by [the]

Executive and Judiciary into the legislative sphere.").  The Clause "serves the additional function

of reinforcing the separation of powers so deliberately established by the Founders."  *United*

*States v. Johnson*, 383 U.S. 169, 178 (1966); *see also Helstoski*, 442 U.S. at 491 ("[The] purpose

[of the Clause] was to preserve the constitutional structure of separate, coequal, and independent

branches of government.").

Both the Supreme Court and the D.C. Circuit have held that the Speech or Debate Clause

unequivocally and categorically protects Members of Congress from being compelled to provide

documentary evidence[8] or testimony[9] about activities falling "within the sphere of legitimate

---

[8] *See, e.g.*, *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1203 (D.C. Cir. 2009); *United States v. Dean*, 55 F.3d 640, 663 n.14 (D.C. Cir. 1995) (noting trial court's quashing of testimonial subpoena on Speech or Debate grounds); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859-61 (D.C. Cir. 1988).

[9] *See, e.g.*, *Dennis v. Sparks*, 449 U.S. 24, 30 (1980) (dicta); *Miller v. Transamerican Press, Inc.*, 709 F.2d 524, 528-29 (9th Cir. 1983).

legislative activity," and its protections are "absolute."  *See Eastland*, 421 U.S. at 501 ("The question to be resolved is whether the actions of the [Members] fall within the sphere of legitimate legislative activity.  If they do, the petitioners 'shall not be questioned in any other Place' about those activities since the prohibitions of the Speech or Debate Clause are absolute." (quoting U.S. Const. art. I, § 6, cl. 1; other internal quotation marks and citations omitted)); *Doe v. McMillan*, 412 U.S. 306, 311-12 (1973); *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 416, 421 (D.C. Cir. 1995) (quashing subpoena).  The protections afforded by the Speech or Debate Clause apply to all activities within the "legislative sphere," which includes all activities that are "an integral part of the deliberative and communicative processes by which Members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or *with respect to other matters which the Constitution places within the jurisdiction of either House*." *Gravel*, 408 U.S. at 624-25 (emphasis added).

Courts have "plainly not taken a literalistic approach in applying the privilege" but have construed the protection broadly to encompass a wide range of legislative acts.  *See id.* at 617; *see, e.g.*, *Howard v. Off. of Chief Admin. Officer of U.S. House of Representatives*, 720 F.3d 939, 946 (D.C. Cir. 2013) (noting "legislative activity" broadly includes "anything 'generally done in a session of the House by one of its members in relation to the business before it'" (citation omitted)).  The Clause also bars inquiry into the motivation for legislative acts.  *See Helstoski*, 442 U.S. at 489 ("The Clause protects 'against inquiry into acts that occur in the regular course of the legislative process and into the motivation for those acts.'" (quoting *United States v. Brewster*, 408 U.S. 501, 525 (1972))).  When the Clause applies, its protections are absolute in both the civil and criminal contexts.  *See Eastland*, 421 U.S. at 502; *Gravel*, 408 U.S. at 615-16;

*United States v. Rayburn House Office Bldg., Room 2113*, 497 F.3d 654, 660, 662-63 (D.C. Cir. 2007) ("The bar on compelled disclosure is absolute, and there is no reason to believe that the bar does not apply in the criminal … context." (citation omitted)).

Therefore, even if the Members did possess the materials or information that Mr. Zink seeks, they would be protected from disclosure by the Speech or Debate Clause's absolute immunity because they relate to legislative acts.  The House met on January 6 to carry out its constitutional duty, under the Twelfth Amendment, to count the votes of the Electoral College. The Subpoenas request materials directly related to these legislative proceedings; for example, they ask for communications related to "why" and "when" a recess was taken, as well as "plans to resume the Joint Session of Congress."  The acts of recessing the House and calling the House to order are "an integral part of the deliberative and communicative processes by which Members participate in … House proceedings with respect to … matters which the Constitution places within the jurisdiction of either House."  *See Gravel*, 408 U.S. at 625.  Those acts that occurred on January 6 dictated exactly when the House discharged the responsibilities it is assigned by the Twelfth Amendment.  Any communications related to those actions are thus absolutely protected from disclosure by the Speech or Debate Clause.  For the same reason, the Members may not be forced to testify about those legislative acts, including any motivation for taking them.  *See Helstoski*, 442 U.S. at 489.

Moreover, the Speech or Debate Clause also protects as legislative acts those actions that regulate the "very atmosphere in which lawmaking deliberations occur."  *See Barker v. Conroy*, 921 F.3d 1118, 1128 (D.C. Cir. 2019) (citation omitted).  And it is hard to imagine an act that more fundamentally regulates the atmosphere in which deliberations occur than one that officially begins or ends those deliberations.  The Members thus cannot be compelled to produce

materials or to provide testimony related to the acts of recessing the House and calling it back into session.

The Court's role here is limited solely to determining whether the relevant activities were an integral part of the legislative process. *See United States v. Dowdy*, 479 F.2d 213, 226 (4th Cir. 1973) ("Once it [i]s determined ... that the legislative function ... was *apparently* being performed, the propriety and the motivation for the action taken, as well as the detail of the acts performed, are immune from judicial inquiry."); *McCarthy v. Pelosi*, 5 F.4th 34, 40 (D.C. Cir. 2021) (holding that the Clause "applie[s] to other matters which the Constitution places within the jurisdiction of either House" (quoting *Consumers Union of U.S., Inc. v. Periodical Correspondents' Ass'n*, 515 F.2d 1341, 1351 (D.C. Cir. 1975))).

That test is easily met here. All the matters into which Mr. Zink seeks to probe are manifestly legislative in nature, as they relate to the unique constitutional duty delegated to Congress to count electoral votes. Accordingly, the Speech or Debate Clause "absolutely" protects the Members from being compelled to produce materials or testify about the matters sought by Mr. Zink.

## III.    The Subpoenas Are Unreasonable and Oppressive

To require compliance with criminal subpoenas, the party seeking production "must clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974); *see also United States v. Bebris*, 4 F.4th 551, 559-60 (7th Cir. 2021) ("Where the sought testimony is cumulative or immaterial, a court does not abuse its discretion by quashing a Rule 17(a) subpoena." (citations omitted)), *cert. denied*, 142 S. Ct. 489 (2021). If a subpoena does not satisfy these three requirements, it will be considered "unreasonable or oppressive" and, under Rule 17, can be quashed or modified. *See United States v. Libby*, 432 F.

Supp. 2d 26, 31 (D.D.C. 2006) (citations omitted); Fed. R. Crim. P. 17(c)(2) (noting that "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive"). "[T]he party requesting the information" carries the burden of satisfying the "exacting standards" of the *Nixon* test. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 386 (2004). Even if the Members possessed the communications and information that Mr. Zink seeks, he has not shown—and cannot show—that they are relevant or material to this case.[10]

Mr. Zink is charged with (1) attempting to corruptly obstruct an official proceeding, (2) entering and remaining in a restricted building or grounds, and (3) engaging in disorderly and disruptive conduct in a restricted building or grounds. *See generally* ECF No. 6 at 1-2. None of the communications that Mr. Zink seeks from the Members are relevant to these charges or to any potential defenses to these charges. While Mr. Zink appears to believe these materials would shed light on the decision-making process for stopping and restarting the House's performance of its constitutional duties on January 6, that information would not be relevant or material to the offenses with which Mr. Zink has been charged. *See, e.g.*, 18 U.S.C. § 1512(c)(2) (making it a crime to "corruptly … obstruct[], influence[], or impede[] any official proceeding, *or attempt[] to do so*" (emphasis added)). The materials would not speak to the issues of Mr. Zink's intent to disrupt Congressional proceedings, his presence in restricted areas, or his disorderly conduct. *See* ECF No. 68 at 7-8 ("Tangential subjects, such as communications regarding the suspension of the Joint Session to certify the Electoral College vote, have no

---

[10] Similarly, because the Subpoenas "relat[e] to the official functions of the House," they must be "consistent with the privileges and rights of the House." *See* Rule VIII.1(b), VIII.3(a), Rules of the U.S. House of Representatives, 118th Cong. (2023), *available at* https://perma.cc/E7PV-4XVQ (House Rules (118th Cong.)). Because these Subpoenas seek both irrelevant and immaterial testimony, they cannot be consistent with the House's privileges and rights.

relevance to Zink's intent to disrupt official proceedings, or to enter and remain on restricted Capitol grounds."); *id.* at 8 ("[S]uch communications are wholly irrelevant to Zink's intent to obstruct Congress and unlawfully trespass within the restricted area around the Capitol."). Testimony about these topics would not be relevant or material, either, for the same reasons. The Subpoenas should therefore be quashed for this reason as well.

Indeed, Mr. Zink has not made "any attempt to show materiality of congressional items to the defense." *United States v. Haldeman*, 559 F.2d 31, 77 (D.C. Cir. 1976); *see also United States v. Fitzsimons*, 342 F.R.D. 18, 20-21 (D.D.C. 2022) (quashing January 6 defendant's subpoena because he failed to proffer how the videos sought by the subpoenas contained relevant evidence); *In re Sealed Case*, 121 F.3d 729, 754-55 (D.C. Cir. 1997) ("Rule 17(c) precludes use of a trial subpoena to obtain evidence that is not relevant to the charges being prosecuted or where the claim that subpoenaed materials will contain such evidence represents mere speculation."). And as this Court recently explained when discussing missing Secret Service text messages in its opinion denying Mr. Zink's motion to dismiss: "'[t]here is nothing obviously relevant about the … messages — whatever they may be — to [Defendant's] knowledge of the restricted area, his disorderly conduct, or any other elements of the crimes charged.' … Nor has Zink attempted to show otherwise." *See* ECF No. 82 at 6-7 (alterations in original) (citation omitted). The same is true here.

These Subpoenas also fail to meet the specificity requirement set forth by the Supreme Court in *Nixon* for two independent reasons. To begin with, they involve sweeping document requests with language like "any and all communications" over a two-week timeframe, demonstrating that they are improper requests for discovery, poorly disguised as Rule 17 subpoenas. *See Nixon*, 418 U.S. at 698; *Haldeman*, 559 F.2d at 75 (noting that "Criminal Rule

17(c) … is not a discovery device" and instead "confines a subpoena duces tecum to admissible evidence"); *Libby*, 432 F. Supp. 2d at 31 ("While 'exquisite specificity' is not required, courts will not approve a subpoena for documents based upon requests for disclosure from broad categories of documents." (internal citation omitted)).  Furthermore, Mr. Zink has not reasonably specified the information contained in the material that would aid his defense.  "If the moving party cannot reasonably specify the information contained or believed to be contained in the documents sought but merely hopes that something useful will turn up, this is a sure sign that the subpoena is being misused."  *United States v. Noriega*, 764 F. Supp. 1480, 1493 (S.D. Fla. 1991); *cf. United States v. North*, 713 F. Supp. 1448, 1449 (D.D.C. 1989) (quashing subpoena because the criminal defendant failed to "demonstrate with requisite specificity in concrete terms what further information only President Reagan could supply that would be material and essential to the defense").

There are also additional circumstances here that make these Subpoenas unreasonable and oppressive.  To the extent that Mr. Zink wants to ask the Members about the decision-making process for recessing the House, they were not personally involved in that decision.  Indeed, as Representatives belonging to the then-minority party, they did not have authority under the House Rules to call a recess.  *See supra* at 6.  Thus, the subpoenaed Members would have no firsthand knowledge of the information that Mr. Zink appears to seek, and others would be better situated to answer Mr. Zink's questions.

## IV.   Mr. Zink Cannot Show Extraordinary Circumstances Warranting the Members' Testimony

All three Subpoenas should also be quashed because well-established federal common law makes clear that high-ranking government officials may not be forced to testify about their official actions in litigation where they are not a party, absent compelling or extraordinary

circumstances.  *See, e.g.*, *United States v. Morgan*, 313 U.S. 409, 422 (1941) (holding that the

Secretary of Agriculture should have never been called to testify); *Simplex Time Recorder Co. v.*

*Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) (holding that top "officials should not, absent

extraordinary circumstances, be called to testify regarding their reasons for taking official

actions").  The "apex doctrine," as it is sometimes called, applies in the criminal and civil

contexts.  *See In re United States (Reno & Holder)*, 197 F.3d 310, 316 (8th Cir. 1999) (quashing

capital defendant's subpoenas seeking to compel testimony of Attorney General and her deputy

to support defendant's motion to set aside jury verdict).  "High ranking government officials

have greater duties and time constraints than other witnesses. … [T]o protect officials from the

constant distraction of testifying in lawsuits, courts have required that defendants show a special

need or situation compelling such testimony."  *In re United States (Kessler)*, 985 F.2d 510, 512

(11th Cir. 1993) (per curiam).

Members of Congress, as constitutional officers of the United States, are quintessential

high-ranking government officials entitled to protection from compelled testimony under this

doctrine.  *See, e.g.*, *Moriah v. Bank of China, Ltd.*, 72 F. Supp. 3d 437, 440-41 (S.D.N.Y. 2014)

(quashing subpoena to former House Majority Leader Eric Cantor); *McNamee v. Massachusetts*,

No. 12-40050-FDS, 2012 WL 1665873, at *1 (D. Mass. May 10, 2012) (quashing a subpoena

because "requiring Rep. McGovern to testify in a matter as to which he has only a tangential

association would unduly burden his ability to fulfill his governmental responsibilities");

*Springfield Terminal Ry. Co. v. United Transp. Union*, No. 89-0073, 1989 WL 225031, at *2

(D.D.C. May 18, 1989) (quashing subpoena to a Member of Congress based on the apex doctrine

because the discovery would disrupt his work).

Mr. Zink, as the subpoenaing party, "bears the burden of proving extraordinary circumstances." *In re United States (Bernanke)*, 542 F. App'x 944, 948 (Fed. Cir. 2013); *Reno & Holder*, 197 F.3d at 316.  At least three factors must be present before extraordinary circumstances suffice to justify compelling a high-ranking government official's testimony: (1) the provision of the testimony must not interfere with the official's government responsibilities; (2) the information sought must not be obtainable elsewhere; and (3) the information sought must be essential (not merely relevant) to the party's claim or defense in the case.  *See, e.g.*, *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008); *Simplex Time Recorder*, 766 F.2d at 587; *United States v. Newman*, 531 F. Supp. 3d 181, 189-91 (D.D.C. 2021); *Marisol A. v. Giuliani*, No. 95-cv-10533, 1998 WL 132810, at *2-3 (S.D.N.Y. Mar. 23, 1998).  None of these requirements can be satisfied here, let alone all three.

*First*, complying with the Subpoenas would clearly interfere with the Members' official duties.  The D.C. Circuit has recognized that "service in the United States Congress is not a job like any other." *United States v. Rostenkowski*, 59 F.3d 1291, 1312 (D.C. Cir. 1995).  For example, when the House is in recess, as it is for the first week of September, the Members often work in their home districts or otherwise maintain a full schedule of official events, making them unavailable to testify.  And here, Speaker McCarthy, in particular, has just returned from a bipartisan Congressional delegation to examine the impact of the wildfires in Maui and will be in Asia on official business during the first week of September.  The House will then return to session during the week of September 11, meaning the Members are required by House Rules to be present to cast votes on the House floor.  *See* House Rule III.1 (118th Cong.) ("Every Member

shall be present within the Hall of the House during its sittings … and shall vote on each question ….”); *see also* House Calendar, 118th Cong., 1st Sess.[11]

Beyond these generally applicable duties, Speaker McCarthy and Chairman Jordan have additional responsibilities that would be disrupted if they were required to testify.  As Speaker of the House, Speaker McCarthy, among other things, is responsible for preserving order and decorum in the House, controlling the Capitol facilities assigned to the House, and ruling on questions of order.  *See generally* House Rules I.1-I.5 (118th Cong.).  As Chairman of the Committee on the Judiciary (which is responsible for considering legislation and conducting oversight on subjects related to its jurisdiction), Chairman Jordan, among other things, presides over Committee hearings and meetings, authorizes Committee subpoenas, and rules on privilege claims that witnesses make during depositions.  *See generally* Rules of Procedure, Committee on the Judiciary, 118th Cong. (2023).[12]  In sum, requiring the Members to testify in this trial would directly interfere with their official duties.

*Second*, Mr. Zink cannot demonstrate that the Members possess any information unobtainable elsewhere.  Information about the timing of the House's recesses on January 6 is publicly available in the Congressional Record and has been widely published.  The Department of Justice has made videos from January 6 available to Mr. Zink, and, as explained above, he can also work with CHA to access other such videos.  If any communications from the Capitol Police, Sergeants at Arms, Speaker or Congressional leadership, FBI, or Secret Service related to the plans to call a recess or resume the House session or the effects of discovering the pipe bomb near Capitol Hill exist, they are obtainable from other sources.  The Members also don't have

---

[11] *Available at* https://perma.cc/GPB5-M33R.

[12] *Available at* https://perma.cc/4K5H-986V.

any "unique first-hand knowledge," *see Moriah*, 72 F. Supp. 3d at 440, of the motivations or the intent behind the Speaker pro tempore's decisions regarding the calling and ending of recesses on January 6.  They did not participate in the process, and, as members of the then-minority party, had no authority to make those decisions.  All in all, it is perplexing why Mr. Zink has chosen to subpoena these three Members.

*Third*, as described above, the information that Mr. Zink is seeking from the Members is not relevant to his defense, much less "essential" to it.

## CONCLUSION

For all of these reasons, this Court should grant the Motion to Quash the Subpoenas issued to these Members of Congress.


September 5, 2023                              Respectfully submitted,

                                              */s/ Matthew B. Berry*
                                              MATTHEW B. BERRY
                                                *General Counsel*
                                              TODD B. TATELMAN
                                                *Deputy General Counsel*
                                              BRADLEY CRAIGMYLE
                                                *Associate General Counsel*
                                              RACHEL A. JANKOWSKI
                                                *Assistant General Counsel*

                                              Office of General Counsel
                                              U.S. House of Representatives
                                              5140 O'Neill House Office Building
                                              Washington, D.C. 20515
                                              (202) 225-9700
                                              Matthew.Berry@mail.house.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 5, 2023, I caused the foregoing document to be filed with the Court and served on the parties via electronic mail.


<u>*/s/ Matthew B. Berry*</u>
Matthew B. Berry