UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RYAN SCOTT ZINK,<br><br>Defendant. | Criminal Action No. 21-191 (JEB) |

**MEMORANDUM OPINION**

On September 13, 2023, a jury found Defendant Ryan Zink guilty of three counts arising from his conduct at the U.S. Capitol on January 6, 2021: Obstruction of an Official Proceeding, in violation of 18 U.S.C. § 1512(c) (Count I); Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count II); and Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count III). Zink now moves for a new trial, asserting both that the evidence was insufficient on Count I and that he has uncovered new evidence that would change the outcome. Unpersuaded by either position, the Court will deny the Motion.

**I.      Legal Standard**

Federal Rule of Criminal Procedure 29(c)(1) provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." When considering such a motion, the court must "consider[] th[e] evidence in the light most favorable to the government" and uphold a guilty verdict if "any rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt." United States v. Wahl, 290 F.3d 370, 375 (D.C. Cir. 2002) (cleaned up).  Put another way, the court must determine whether "a reasonable juror must necessarily have had a reasonable doubt as to the defendants' guilt."  United States v. Weisz, 718 F.2d 413, 437 (D.C. Cir. 1983).

Federal Rule of Criminal Procedure 33(a), in turn, provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires."  "Trial courts enjoy broad discretion in ruling on a motion for a new trial."  United States v. Wheeler, 753 F.3d 200, 208 (D.C. Cir. 2014).  This is true in part because "[t]he rules do not define 'interests of justice' and courts have had little success in trying to generalize its meaning."  Id. (citation and internal quotation marks omitted).  At bottom, the D.C. Circuit counsels that "granting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred."  Id. (citation and internal quotation marks omitted).

**II.    Analysis**

In his Motion, Zink invokes both Rule 29 and Rule 33 in seeking vacatur of the verdict and a new trial, though he addresses only the standard for obtaining a new trial under Rule 33.  See ECF No. 106 (Mot.) at 1.  Adding to this confusion is the fact that the Motion maintains that the evidence is insufficient as to "each and every count," but only discusses perceived inadequacies as to Count I.  Id. at 2.  The Court will thus consider Zink's contentions as to Count I before proceeding to his more general assertion that newly discovered evidence entitles him to some relief.

A. Obstruction of an Official Proceeding

Count I invokes 18 U.S.C. § 1512(c)(2), which prohibits "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding."  Zink makes four arguments against his

conviction on this count. First, he contends that "the evidence was clear that no one inside the U.S. Capitol on January 6 could have heard or been affected by anything" he did or said. See Mot. at 3. Second, he asserts that there is no evidence that he acted "corruptly," as that term was interpreted by the Circuit a few months ago. See ECF No. 114 (Supp. to Mot.) at 1–3. Third, he submits that § 1512(c)(2) is unconstitutionally vague. Id. at 3. Fourth, he argues that the statements he made at the Capitol are protected by the First Amendment and thus could not be the basis for his conviction on this charge. See Mot. at 3–5. The Court considers each in turn.

1. *Obstructive Acts*

Defendant initially insists that his conduct did not obstruct congressional proceedings on January 6. After all, says Zink, the evidence showed that he simply "walked at a normal pace . . . accompanied by thousands of others" and occasionally joined in group chants. Id. at 2–3. As such, he maintains that there is no way his conduct could have obstructed any official proceeding.

Even taking Zink's characterization of his conduct on its own terms, there was still sufficient evidence for a rational trier of fact to find that he violated § 1512(c)(2). As Judge Colleen Kollar-Kotelly has explained, "[E]ven the presence of one unauthorized person in the Capitol is reason to suspend Congressional proceedings." United States v. Rivera, 607 F. Supp. 3d 1, 9 (D.D.C. 2022). This is all the more so when that one is present as part of an "unlawful mob" that "disturbs the normal and peaceful condition of the Capitol grounds and . . . its official proceedings." United States v. Griffith, 2023 WL 3477249, at *5 (D.D.C. May 16, 2023).

By Zink's own admission, he was part of the "thousands of others" who stormed the Capitol on January 6. See Mot. at 2–3. The jury heard evidence that Zink traveled from Arizona to Washington on January 5, 2021, to attend the "Stop the Steal" rally. See Trial Transcript of

Sept. 7, 2023 (Tr. III) at 48–49, 171–73.  It also watched a video of Zink within the restricted Capitol grounds where he shouts (among other things): "We knocked down the gates," "We're storming the Capitol," "There's thousands of us here, they can't stop us all."  ECF No. 109 (Gov't Resp.) at 8–9 (quoting Gov't Trial Exh. 103.1).  It further heard that the presence of Zink and the other rioters, both inside and outside of the Capitol itself, posed a threat to members of Congress and in fact prevented them from moving forward with the certification of the election — the official proceeding that was taking place that day.  See Trial Transcript of Sept. 5, 2023 (Tr. I) at 183–84.  And, to top it all off, it was presented with a Facebook post Zink made after the events of January 6 that stated, "Broke down the doors pushed Congress out of session."  Gov't Resp. at 9 (quoting Trial Ex. 202.4).  Zink's own conduct might have been less culpable had he acted alone and done it elsewhere, but "that is not what occurred on January 6."  United States v. Ballenger, 2023 WL 4581846, at *5 (D.D.C. Jul. 18, 2023).

In short, there was more than enough evidence for a rational jury to find that Zink actively participated in the riot that took place on January 6 and that his actions prevented Congress from carrying out its duties that day.  As to this element of § 1512(c)(2), that is all that is required.

    2.  *Corrupt Intent*

In addition, Zink objects to his conviction on the ground that there was no showing that he acted "corruptly."  18 U.S.C. § 1512(c)(2).  He focuses on what he takes to be the holding of the Circuit's recent decision in United States v. Robertson, 86 F.4th 355 (D.C. Cir. 2023) — *viz.*, that the "corruptly" element requires evidence of an "independent felonious means."  Supp. at 1.  Since his Count I conviction is (by his lights anyway) a "self-standing proposition, unsupported by" such independent means, he is entitled to a retrial.  Id.

4

The problems with this position are legion. For one, Robertson did not hold that the "corruptly" element requires proof that a defendant employed independent felonious means to obstruct an official proceeding. On the contrary, it held that "corruptly in obstruction statutes can be proved in a variety of ways," including by showing that a defendant used independent unlawful means. Robertson, 86 F.4th at 368–69 (quotation marks omitted). As the majority explained, however, "corruptly" can also be established by showing that the defendant acted with a "corrupt purpose" or that he acted "with the intent of obtaining an unlawful benefit for himself or another." Id. at 367, 378. Simply put, "there are multiple ways to prove that a defendant acted 'corruptly.'" Id. at 368.

As the Government notes, moreover, the Circuit did not distinguish between felonious and non-felonious illegal means in concluding that §1512(c)(2) "encompasses acting through independently unlawful means." Id. at 369 (emphasis added); ECF No. 117 (Gov't Response to Supplement) at 4–5. Indeed, the Robertson majority cited with approval the jury instructions given by the district court there, which provided that "corruptly" could be established by demonstrating that a defendant obstructed an official proceeding "by engaging in other independently unlawful conduct." 86 F.4th at 368 (cleaned up). While the Circuit left open the question of whether § 1512(c)(2) applies to "minor advocacy, lobbying, and protest offenses" similar to the misdemeanors of which Zink was convicted, see United States v. Fischer, 64 F.4th 329, 380 (D.C. Cir. 2023) (Katsas, J., dissenting), its reasoning and the authorities it relies on seem to suggest that it does.

The Court does not need to decide the parameters of this section now, however, because "corruptly" may also be proven by showing that Zink acted to obtain an unlawful benefit for someone else. See Robertson, 86 F.4th at 377–78. Before January 6, he made Facebook posts

5

such as "[K]iss your freedom goodbye if Biden wins." Gov't Resp. at 8 (quoting Gov't Trial Exh. 202.1). On the morning of January 6, he posted a video of himself in which he made statements such as "Stop the Steal" and "MAGA, go Trump, Trump 2020." Id. (quoting Gov't Trial Exh. 101.1). He later went into the restricted Capitol grounds and filmed himself shouting, "We want Trump!" many times over. Id. at 9 (quoting Gov't Trial Exh. 103.1). And later that day, Zink stated in a social-media post that he and the rest of the mob "accomplished the job" by "push[ing] Congress out of session." Id. (quoting Gov't Trial Exh. 202.4). As these snippets of the record presented to the jury show, there was sufficient evidence to prove that Zink intended to confer upon Donald J. Trump the "unlawful benefit" of remaining in office, despite Trump's having lost the election, when he illegally entered the Capitol grounds. Robertson, 86 F.4th at 378. As before, nothing more is required to uphold this conviction.

       3.   *Unconstitutional Vagueness*

Next, Zink attacks his conviction on the ground that § 1512(c)(2) is "plainly void for vagueness." Supp. at 3. Generally, a statute violates due process only if it is "so vague that it fails to give ordinary people fair notice of the conduct it punishes." Johnson v. United States, 576 U.S. 591, 595 (2015). A statute can be valid, conversely, even if it requires individuals to use their own judgment to determine if an action is illegal. Id. at 603–04 ("[W]e do not doubt the constitutionality of laws that call for the application of a qualitative standard . . . to real-world conduct."). It is the citizen's duty to know the law, and a law is not unconstitutionally vague simply because two people may interpret it differently. See United States v. Bronstein, 849 F.3d 1101, 1107 (D.C. Cir. 2017).

Zink's argument here has already been rejected by courts in this district (including this one), which have offered full and persuasive analyses of submissions that mirror his. See, e.g.,

United States v. Mock, 2023 WL 3844604, at *4 (D.D.C. June 6, 2023); United States v. Oseguera Gonzalez, 2020 WL 6342948, at *7 (D.D.C. Oct 29, 2020); United States v. Sandlin, 575 F. Supp. 3d 16, 34 (D.D.C. 2021); United States v. Mostofsky, 579 F. Supp. 3d 9, 26 (D.D.C. 2021). The Court sees no basis for treading a different path.

Defendant nonetheless argues that the D.C. Circuit's decisions in Fischer and Robertson — which collectively produced "at least five materially differing [opinions]," according to him — suggest that the term "corruptly" is unconstitutionally vague. See Supp. at 3. That position assigns more weight than those cases will bear. The Court of Appeals decided Fischer 2–1, with Judge Florence Pan writing the lead opinion and Judge Justin Walker writing a concurrence to lay out his interpretation of "corruptly." Although he and Judge Pan could not agree on the precise definition of the term, neither found "corruptly" vague. Compare Fischer, 64 F.4th at 339, 342 (declining to articulate exact contours of "corruptly" but holding that term is not vague under any definition) with id. at 352, 361–62 (Walker, J., concurring) (defining term but nevertheless concluding that "corruptly" is not vague).

A similar dispute played out in Robertson. The majority concluded that the "corruptly" element in § 1512(c)(2) could be proved in more than one way, meaning that there was no "sole and exclusive" method of establishing this element. See 86 F.4th at 371–72. The majority went on to note that the defendant there had not renewed his vagueness argument on appeal, which would face an "uphill battle" in any event. Id. at 371 n.7. For its part, the dissent believed that Judge Walker's definition of "corruptly," as developed in his Fischer concurrence, was binding because it was necessary to create a majority and was the best interpretation of the term anyway. Id. at 386, 388–393 (Henderson, J., dissenting). Neither the majority nor the dissent, however,

7

expressed any vagueness concerns with the term "corruptly". Nor is their disagreement *ipso facto* evidence that such concerns are warranted. See Bronstein, 849 F.3d at 1107.

Having offered no reason to depart from this Court's previous ruling in Mostofsky, Defendant's Motion thus does not succeed.

    4. *First Amendment*

Zink takes on his Count I conviction from one last angle, positing that the Government offended the First Amendment by charging him for speaking in the "free speech forum" that is the Capitol grounds. See Mot. at 1, 3. The Government retorts that Zink was not prosecuted for what he said but for what he did and that the restrictions in place at the Capitol pass constitutional muster. See Gov't Resp. at 6–7.

The Court agrees with the Government. Section 1512(c) reaches only corrupt acts, so it does not "proscribe lawful or constitutionally protected speech." United States v. Caldwell, 581 F. Supp. 3d 1, 34 (D.D.C. 2021) (internal citation omitted). Zink's real problem is that he had no right to create a security risk by entering the restricted area of the Capitol grounds, whether he was speaking or not.

The exterior grounds of the Capitol are traditional public fora that the Government may close only if the restrictions "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Mahoney v. United States Capitol Police Bd., 566 F. Supp. 3d 1, 9 (D.D.C. 2022) (quoting Mahoney v. Doe, 642 F.3d 1112, 1117 (D.C. Cir. 2011)). The Government's restrictions here satisfy this standard: they were content neutral because the grounds were closed to all speakers regardless of their message; they were narrowly tailored to safeguard the ongoing electoral-certification process and protect against the spread of COVID-19; and they left ample alternative channels of

communication available in other places adjacent to the Capitol. See United States v. Easterday, 2023 WL 6646384, at *3–4 (D.D.C. Oct. 12, 2023) (reaching same conclusion). Defendant, in fact, does not even argue that he had a right to be in the restricted area, and he seemingly admits that "reasonable" restrictions such as these are permissible. See, e.g., Mot. at 3 (citing Cmty. for Creative Non-Violence v. Kerrigan, 865 F.2d 382, 387 (D.C. Cir. 1989) (upholding restriction on using props for protests on Capitol grounds)).

Because the Capitol Police and Secret Service's restricted perimeter was consistent with the First Amendment, Zink's last objection to his conviction on Count I gains no more traction than his others.

B.  Newly Discovered Evidence

Zink separately attempts to obtain a new trial by arguing that he has found "newly discovered information that the government withheld . . . from the defense." Mot. at 10. He believes that he has been deprived of "plainly exculpatory" evidence in the form of photographs he took on January 6, the vast majority of which he contends the Government still withholds. Id. at 12. He supposes that this evidence would be exculpatory because it would have supported his main defense at trial: that he was there not to obstruct official proceedings, but to "take pictures for his father's political campaign." Id. at 10.

Under Rule 33, a defendant "is not entitled to a retrial on the basis of newly discovered evidence unless he can show that a new trial would probably produce an acquittal." United States v. Williams, 233 F.3d 592, 593 (D.C. Cir. 2000) (cleaned up). He must also show that the new evidence is not "merely cumulative." Thompson v. United States, 188 F.2d 652, 653 (D.C. Cir. 1951). And, to state the obvious, the evidence must actually be newly discovered — *i.e.*, the evidence "must have been discovered since the trial." Id.

As is clear from Zink's submission, what he has purportedly found is not evidence but the absence thereof. See, e.g., Mot. at 10 (claiming that he discovered, during trial, that he "had been deprived of most of the evidence in this case"). Putting that to the side, this argument fails for three basic reasons: the evidence in question is not exculpatory, not new, and cumulative. Starting with the first, Zink has not explained why these photographs would "probably produce an acquittal." United States v. Lafayette, 983 F.2d 1102, 1105 (D.C. Cir. 1993) (citation omitted). As explained above, the jury watched a video of Defendant inside the restricted area of the Capitol grounds shouting things like, "We want Trump," "We stormed the Capitol," and "Stop the steal." Gov't Resp. at 9 (quoting Gov't Trial Exh. 104.1). It was presented with evidence that Zink went up the stairs that lead to the Columbus Doors on the east front of the Capitol even after he had seen a police line form near the top of these stairs. See Trial Transcript of Sept. 11, 2023 (Tr. IV) at 27, 129–32, 134–35. It also heard that the congressional proceedings on January 6 were impeded by the mob, a fact that Zink not only recognized but seemed to celebrate. See Gov't Resp. at 9 (Zink social media post stating, "Broke down the doors pushed Congress out of session" and "[W]e accomplished the job") (quoting Gov't Trial Exh. 202.4).

As the Government notes, moreover, the few photographs from Zink's camera that the jury saw undermined the notion that he was there as a campaign photographer. One of these, for instance, "showed rioters pushing against police," while another showed members of the mob rushing past the initial police line. See Gov't Resp. at 19 (citing Gov't Trial Exhs. 201.1 & 201.2). Indeed, the vast majority of videos, photographs, and social-media posts the jury viewed had nothing to do with Jeffrey Zink's congressional campaign and had everything to do with the events of January 6; indeed, Jeffrey Zink seldom appears at all in these materials and never as the

main subject of any video or post. See id. at 20 (noting that even in trial exhibit where Jeffrey Zink was giving interview, Defendant "trained his iPhone camera on himself and talked about" certification of election) (citing Gov't Trial Exh. 102.1). Defendant never explains how the missing photographs would rebut the Government's evidence or why his initial plan to be there for his father's campaign — assuming that really was his intention — is incompatible with a later decision to unlawfully enter the Capitol grounds to obstruct congressional proceedings. This is a fatal deficiency, since it is his burden to show a "reasonable likelihood that the missing evidence would affect the outcome of his case." United States v. Zink, 2023 WL 5672555, at *3 (D.D.C. Sept. 1, 2023) (cleaned up).

Second, this evidence is hardly new. Zink does not explain why he waited until trial to request these photographs from the Government, given that he was aware of their existence as of January 6 when he took them. See Tr. IV at 67; cf. United States v. Derr, 990 F.2d 1330, 1335 (D.C. Cir. 1993) ("Brady only requires disclosure of information unknown to the defendant and then generally only upon request.") (cleaned up). This is plainly not new evidence; in fact, Defendant, moreover, offered the absence of the photographs as a basis for mistrial on the fourth day of trial. See Tr. IV at 65–66 ("We move for mistrial, Your Honor, and that's on the basis of these hundreds, potentially over a thousand pictures that have not been provided to us at this time[.]"). The Court denied this Motion then because Zink was not diligent in seeking this evidence and because there was no reason to think these photographs were "material or helpful." Id. at 68–69.

At the end of trial, the defense again moved for a mistrial on the same exact grounds. See Trial Transcript of Sept. 13, 2023 (Tr. V) at 97 ("Number one, we would ask for a mistrial because we believe it's a potential Brady violation and a violation of [the Government's]

discovery obligations."). Indeed, Zink filed a supplement in support of that Motion for Mistrial that closely tracks the language of his current Motion for a New Trial. Compare ECF No. 95 (Defense Supplement to Oral Motion for Mistrial) with Mot. The Court once again denied the Motion. See Tr. V at 98. Whatever else might be said of this "discovery," it certainly is not new.

Last, this evidence is cumulative of the testimony and other evidence presented at trial. The jury heard from defense witness Stephanie Zink that Defendant went to the Capitol that day to take photos that he could later use as campaign material for his father. See Tr. III at 25. It heard the same from Jeffrey Zink, who testified that he brought Defendant to Washington "so that he could video [sic] and take pictures while I was there." Id. at 47. The jury then heard from Defendant himself that he had traveled from Arizona to Washington to "work for [his] father's campaign and to take pictures and document the things that were going on." Tr. IV at 81. And, as described above, it also viewed some of the photographs he took that day, as well as a video where Defendant briefly showed his father being interviewed by the Epoch Times. See Gov't Resp. at 19–20 (citing Gov't Trial Exhs. 102.1, 201.1 & 201.2). Even if these missing photographs confirmed Zink's account, then, they would simply be cumulative of the evidence presented at trial. The Court will thus reject Zink's final attempt to upset his conviction, just as it did with the previous ones.

### III. Conclusion

The Court, accordingly, will issue a contemporaneous Order denying Defendant's [106] Motion for a New Trial.

                                                       */s/ James E. Boasberg*
                                                       JAMES E. BOASBERG
                                                       Chief Judge

Date: <u>January 10, 2024</u>